## EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement"), dated 02/28/2020 ("Effective Date"), is executed by Michael Pircio, an individual ("Employee"). Employee may be individually referred to as a "Party".

### RECITALS

A. Clearsulting, LLC ("Clearsulting", "the Firm") is an Ohio limited liability company with its principal operations located in the state of Ohio and doing business throughout the United States.

B. Clearsulting desires to employ Employee, and Employee agrees to accept such employment, in the position of 2 Senior Analyst for Clearsulting.

### AGREEMENT

**1.  Defend Trade Secret Act Trade Secret Disclosure Notice.**

NOTICE is hereby given that this agreement does not affect any immunity under 18 U.S.C. § 1833(b)(1) or (2). For the purposes of these subsections only, which are reproduced below, individuals performing work as contractors or consultants are considered to be employees.

(1) An individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(2) An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order.

**2.   Restrictive Covenants.** Employee's obligations contained in this section shall be referred to as the "Restrictive Covenants."

    **2.1  Confidentiality.**

        **2.1.1  Definition of Confidential Information.** Clearsulting is in the business of providing professional services to other businesses including management consulting, professional advisory, solution implementation,

project management and execution, and the like ("Clearsulting Business"). Clearsulting has built an established and extensive trade and reputation with respect to its business. Clearsulting has developed and continues to develop commercially valuable technical and non-technical information ("Confidential Information") that is proprietary and confidential and/or constitutes Clearsulting's "trade secrets" within the meaning of the Defend Trade Secrets Act, 18 U.S.C. 1839. Such Confidential Information, which is vital to the success of Clearsulting's business includes, but is not limited to: financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, systems, configurations, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing, manuals, methods, techniques, processes, intellectual property, patents, patents-pending, software, research, know-how, identities of customers and prospective customers, suppliers and prospective suppliers, methods of sales, marketing research and data, cost information, financial information, business plans, specialized requests of customers, and other materials and documents developed by Clearsulting. Furthermore, Confidential Information shall include all proprietary and confidential information received from any client or prospective client of Clearsulting.

**2.1.2  Access to Confidential Information.** Employee shall: (i) intentionally access only such Confidential Information as is reasonably necessary to perform Employee's job functions; and (ii) allow access to Confidential Information under Employee's control only to those co-employees whose job duties and responsibilities reasonably necessitate access to such Confidential Information.

**2.1.3  Nondisclosure or Use of Confidential Information.** Employee shall not, at any time, either during or subsequent to their employment with Clearsulting, directly or indirectly, appropriate, disclose, or divulge any Confidential Information to any person not then employed by Clearsulting, unless authorized or directed to do so by Clearsulting. If Clearsulting authorizes or directs Employee to disclose Confidential Information to any third party, Employee must ensure a signed confidentiality agreement for the benefit of Clearsulting is or has been obtained from the third party to whom Confidential Information is being disclosed and all Confidential Information disclosed is clearly marked "Confidential."

**2.1.4  Return of Confidential Information.** All Confidential Information provided to Employee, and all documents and things prepared by Employee in the course of Employee's employment, including but not limited to, correspondence, manuals, letters, notes, lists, notebooks, reports,

analyses, flow-charts, proposals, planners, calendars, schedules, discs, data tapes, financial plans and information, business plans, presentations, and other documents and records, whether in hard copy, magnetic media, or otherwise, and any and all copies thereof, are the exclusive property of Clearsulting and shall be returned immediately to Clearsulting upon termination of Employee's employment or upon Clearsulting's request at any time.

**2.2** **Non-Solicitation.**

(a) Employee acknowledges that, because of the nature of your work for Clearsulting, Employee will develop, learn of, have access to, or be provided with Confidential Information. You further acknowledge that your solicitation or serving of certain Clearsulting clients or potential clients after the termination of your employment inevitably would involve the unauthorized use or disclosure of Confidential Information, and impair the protectable relationships and goodwill of Clearsulting. Accordingly, you agree that, for two (2) years following your departure from Clearsulting for any reason, you will not directly or indirectly solicit, accept as a client, or perform services of any type within Clearsulting's Business for, any person or entity: (i) for which you provided services as an employee of Clearsulting or that received the benefit of such services at any time during the two (2) years prior to Employee's departure; or (ii) for which Employee participated in a proposal to provide services at any time during the two (2) years prior to Employee's departure. Employee further agrees that you will not assist others in such solicitation or performance of services. It shall not be relevant that a person or entity desires or prefers that someone other than Clearsulting render services or that the person or entity is already served by you or any third party with which you become associated.

(b) Or utilize any proprietary client or prospect databases owned by or licensed to Clearsulting, for any business enterprise which is the same or substantially similar to Clearsulting's Business for a period of two (2) years after separation date from Clearsulting;

(c) Or (i) solicit or otherwise induce any person employed or engaged by Clearsulting to terminate their employment or engagement with Clearsulting for a period of two (2) years after termination date from Clearsulting. (ii) Employee further agrees that they will not assist others in such solicitation of any person employed or engaged by Clearsulting to terminate their employment or engagement with Clearsulting for a period of two (2) years after termination date from Clearsulting.

**2.3** **Work Made For Hire.** Any product, results of Employee's employment, inventions, discovery, improvements, innovations, copyrights,

trademarks, patents, trade secrets, design or intellectual property created or developed, in whole or in part, during the course of Employee's employment (the "Work") shall be considered work made for hire. Any and all such Work (including all rights therein) belongs to and shall be the sole and exclusive property of Clearsulting. If for any reason the Work would not be considered a work made for hire under applicable law, Employee does hereby sell, assign and transfer to Clearsulting or its successors or assigns the entire right, title and interest to the Work and any registrations and copyright, trademark or patent applications relating thereof, and in and to all works based upon, derived from, or incorporating the Work, throughout the world.

**2.4**     **Enforcement.**

**2.4.1**     **Reasonableness of Restrictions.**  Employee acknowledges compliance with this Agreement is reasonable and necessary to protect Clearsulting's legitimate business interests, including but not limited to goodwill.

**2.4.2**     **Irreparable Harm.**  Employee acknowledges a breach of their obligations under this Agreement will result in great, irreparable, and continuing harm and damage to Clearsulting for which there is no adequate remedy at law.

**2.4.3**     **Injunctive Relief.**  Employee agrees that in the event Employee breaches this Agreement, Clearsulting shall be entitled to seek, from any court of competent jurisdiction, preliminary and permanent injunctive relief to enforce the terms of this Agreement, in addition to any and all monetary damages allowed by law.

**2.4.4**     **Extension of Covenants.**  In the event Employee violates any one or more of the Restrictive Covenants in this Agreement, Employee agrees the running of the term of the Restrictive Covenants so violated shall be tolled during the period(s) of any such violation and the pendency of any litigation arising out of any such violation.

**2.4.5**     **Judicial Modification.**  Employee and Clearsulting have attempted to limit Employee's right to compete only to the extent necessary to protect Clearsulting from unfair business practices and/or unfair competition, but recognize reasonable people may differ in making such a determination. Consequently, Employee and Clearsulting hereby agree that, if the limitation of any of the Restrictive Covenants is determined to be overly broad, a court or other trier of fact may modify and enforce the restrictive Covenants to the extent it believes reasonable under the circumstances existing at that time.

  **2.4.6 Survival.** The Restrictive Covenants shall survive termination of this Agreement and termination of Employee's employment and shall govern all disputes arising hereunder.

**3. Signing Bonus.** If Employee receives a Signing Bonus, if, on or prior to the three (3) year anniversary of the Effective Date, Employee is terminated or resigns from employment with Clearsulting for any reason, Employee must repay one-hundred percent (100%) of the Signing Bonus to Clearsulting within thirty (30) days of Employee's termination or resignation of employment.

**4. Entire Agreement.** This Agreement is intended to be the final, complete, and exclusive statement of the terms of Employee's employment with Clearsulting and may not be contradicted by evidence of any prior or contemporaneous statements or agreements. To the extent that the practices, policies, or procedures of Clearsulting, now or in the future, apply to Employee and are inconsistent with the terms of this Agreement, the provisions of this Agreement shall control. Any subsequent change in Employee's duties, position, or compensation will not affect the validity or scope of this Agreement.

**5. Amendments; Waivers; Remedies.** This Agreement may not be amended or waived except by a writing signed by Employee and by a duly authorized representative of Clearsulting other than Employee. Failure to exercise any right under this Agreement shall not constitute a waiver of such right. Any waiver of any breach of this Agreement shall not operate as a waiver of any subsequent breaches. All rights or remedies specified for a Party herein shall be cumulative and in addition to all other rights and remedies of the Party hereunder or under applicable law.

**6. Assignment; Binding Effect.**

  **6.1** The performance of Employee is personal hereunder, and Employee agrees that Employee shall have no right to assign and shall not assign or purport to assign any rights or obligations under this Agreement. This Agreement may be assigned or transferred by Clearsulting, and nothing in this Agreement shall prevent the consolidation, merger, or sale of Clearsulting or the sale of any of its assets.

  **6.2** Subject to the foregoing restriction on assignment by Employee, this Agreement shall inure to the benefit of and be binding upon each of the Parties, the affiliates, officers, directors, agents, successors and assigns of Clearsulting, and the heirs, devisees, spouses, legal representatives and successors of Employee.

**7. Notices.** All notices or other communications required or permitted hereunder shall be made in writing and shall be deemed to have been duly given if delivered (i) by hand; or (ii) by a nationally recognized overnight courier service; or (iii) by United States first class registered or certified mail, return receipt requested, to the principal address of the other party. The date of notice shall be deemed to be the earlier of (i) actual receipt of notice by

any permitted means; or (ii) five business days following dispatch by overnight delivery service or the United States Mail. Employee shall be obligated to notify Clearsulting in writing of any change in Employee's address.

**8. Severability.** If any provision of this Agreement shall be held by a court to be invalid, unenforceable, or void, such provision shall be enforced to the fullest extent permitted by law, and the remainder of this Agreement shall remain in full force and effect. In the event that the time period or scope of any provision is declared by a court or arbitrator of competent jurisdiction to exceed the maximum time period or scope that such court or arbitrator deems enforceable, then such court or arbitrator shall reduce the time period or scope to the maximum time period or scope permitted by law.

**9. Governing law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio, without regard to principles of conflicts of laws.

**10. Interpretation.** This Agreement shall be construed as a whole, according to its fair meaning, and not in favor of or against any Party. Sections and section headings contained in this Agreement are for reference purposes only, and shall not affect in any manner the meaning or interpretation of this Agreement. Whenever the context requires, references to the singular shall include the plural and the plural the singular.

**11. Authority.** Employee represents and warrants that such party has the right, power, and authority to enter into and execute this Agreement and to perform and discharge all of the obligations hereunder, and this Agreement constitutes the valid and legally binding agreement and obligation of such party and is enforceable in accordance with its terms.

**12. Attorneys' fees.** In the event of any controversy or claim arises out of this Agreement to enforce the terms and conditions of this Agreement or arising from the breach of any provision hereof, the prevailing party will be entitled to receive from the other party all costs, damages, and expenses incurred by the prevailing party, including reasonable attorneys' fees.

EMPLOYEE ACKNOWLEDGES EMPLOYEE HAS HAD THE OPPORTUNITY TO CONSULT LEGAL COUNSEL CONCERNING THIS AGREEMENT AND REPRESENTS THAT THEY HAVE READ AND UNDERSTAND THE AGREEMENT, IS FULLY AWARE OF ITS LEGAL EFFECT, AND HAVE ENTERED INTO THE AGREEMENT FREELY BASED ON EMPLOYEE'S OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS OR PROMISES OTHER THAN THOSE CONTAINED IN THIS AGREEMENT.

**IN WITNESS WHEREOF, Employee has executed this Agreement by affixing Employee's signature to it below:**

Michael Pircio