**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| FIRSTENERGY CORP., | ) CASE NO.: CASENUMBER |
| and | ) JUDGE: JUDGENAME |
| CLEARSULTING LLC, | ) |
| PLAINTIFFS, | ) **MEMORANDUM IN SUPPORT OF** |
| vs. | ) **MOTION FOR TEMPORARY** |
| | ) **RESTRAINING ORDER AND/OR** |
| MICHAEL PIRCIO, | ) **PRELIMINARY INJUNCTION AND/OR** |
| | ) **PERMANENT INJUNCTION** |
| DEFENDANT. | ) |

**I.  INTRODUCTION**

On July 30, 2020, after his employment was terminated, Defendant Michael Pircio knowingly and improperly downloaded from a Clearsulting file storage site, fifty-seven (57) unique files pertaining to FirstEnergy's internal control processes, payment procedures, and sensitive employee (salary) and vendor information used in interstate commerce.  Pircio's Employment Agreement, along with federal and state law, explicitly preclude him from accessing or retaining this sensitive information.  Pircio has no right or interest in this proprietary information, but is refusing to communicate with or return the files to Clearsulting or FirstEnergy.

Plaintiffs will be harmed by the disclosure of this proprietary and confidential information through the loss of business opportunities and reputation, potential lost revenue, and diminished goodwill among FirstEnergy's and Clearsulting's employees, vendors, and potential purchasers of FirstEnergy's and Clearsulting's products and services.  Meanwhile, Pircio has no risk of harm, as he has no interest in the files that he stole.

As such, the Plaintiffs are entitled to a temporary restraining order and preliminary and permanent injunctions prohibiting the further use or disclosure by Pircio of FirstEnergy's trade secret, proprietary, and confidential information and return of all copies of such information in his possession.

## II. STATEMENT OF FACTS

To ensure compliance with its obligations under the Sarbanes-Oxley Act, FirstEnergy has adopted extensive internal accounting controls and, in the recent past, has contracted with Plaintiff Clearsulting to assist FirstEnergy's Internal Auditing Department in independently testing and validating the sufficiency of certain controls. (Affidavit of Laura E. Mollenshott ("Mollenshott Aff."), at ¶ 7, attached as Exhibit A).

Defendant Michael Pircio ("Pircio") was an employee of Clearsulting for a very brief period. Clearsulting hired him on or about February 28, 2020, with employment commencing March 16, 2020; and his employment was terminated on July 30, 2020. (Declaration of Monica Engelhardt ("Engelhardt Decl."), at ¶ 9, attached as Exhibit B). Pircio had the job title "2 Senior Analyst" while employed by Clearsulting. (*Id.* ¶ 10). On or about February 28, 2020, Defendant entered into an employment agreement with Clearsulting (the "Employment Agreement") (attached hereto as Exhibit C). (Engelhardt Decl. ¶ 11). The Employment Agreement includes confidentiality and nondisclosure covenants, described herein. (*Id.* ¶ 12). It further contains Defendant's acknowledgement that breach of the Employment Agreement will result in irreparable harm and that Clearsulting "shall be entitled" to injunctive relief in the event of Defendant's breach. (Employment Agreement §§ 2.4.2-3; Engelhardt Decl. ¶ 16).

As part of its consulting work for FirstEnergy, Clearsulting utilized design assessments, which detailed FirstEnergy's existing processes in four areas relevant to the Sarbanes-Oxley Act: Accounts Payable, Cash Management, Payroll, and Tax. (Engelhardt Decl. ¶ 4). Additionally,

Clearsulting assisted FirstEnergy's testing as to whether the Sarbanes-Oxley Act controls in place within those four areas performed as designed. (*Id.*).

Because Clearsulting needed access to FirstEnergy's proprietary and confidential information to perform its consulting work, FirstEnergy took substantial precautions to prevent the unauthorized use or disclosure of all such information. (Mollenshott Aff. ¶ 12). For example, FirstEnergy's contract with Clearsulting, inter alia, required Clearsulting to maintain the confidentiality of all such information; prohibited the copying of FirstEnergy's information by Clearsulting employees without FirstEnergy's prior written approval; and required Clearsulting to protect against any unauthorized access to or use of FirstEnergy's information. (*Id.* ¶ 13).

Likewise, Clearsulting took precautions to protect the security and secrecy of FirstEnergy's proprietary and confidential information. (Engelhardt Decl. ¶ 8). Among other measures, Clearsulting required its employees, including Pircio, to sign employment agreements in which they reaffirmed the confidentiality of FirstEnergy's information and agreed to access it only as was reasonably necessary to perform the employee's job functions. (*Id.* ¶ 8; *see also Id.* ¶¶ 5–7).

Pircio was not at any time assigned work that related to the proprietary and confidential information he unlawfully downloaded. (Mollenshott Aff. ¶ 23). However, immediately after Clearsulting terminated his employment, Pircio unlawfully accessed Clearsulting's computer, without authorization, and downloaded FirstEnergy's proprietary and confidential information, including but not limited to internal control processes, payment procedures, and sensitive employee and vendor financial information used in interstate commerce. (Engelhardt Decl. ¶ 18).

Specifically, Pircio downloaded several work papers that Clearsulting prepared to test FirstEnergy's controls. (Engelhardt Decl. ¶ 19). The work papers, which compile extensive documents and evidence provided by FirstEnergy to Clearsulting, describe the tests Clearsulting

3

performed as well as Clearsulting's conclusion on the controls' operating effectiveness. (*Id.*). In each case, Clearsulting's work papers validated that FirstEnergy's controls were functioning as designed and were effective to achieve Sarbanes-Oxley compliance. (*Id.*).

While the work papers Pircio downloaded had validated the effectiveness of FirstEnergy's controls, they also contained massive amounts of proprietary and confidential information that, if disseminated to competitors or malefactors, could irreparably harm FirstEnergy. (*See generally* Mollenshott Aff. ¶ 20). Specifically, FirstEnergy will be harmed by the disclosure of this information through the loss of business opportunities and reputation, potential lost revenue, and diminished goodwill among FirstEnergy's employees, vendors, and potential purchasers of FirstEnergy's products and services. (Mollenshott Aff. ¶¶ 31-33). Additionally, Clearsulting will be harmed by the disclosure of this information through the loss of business opportunities and reputation, potential lost revenue, and diminished goodwill among Clearsulting's employees, vendors, and potential purchasers of Clearsulting's products and services. (Engelhardt Decl. ¶ 25).

### III. LAW AND ARGUMENT

In evaluating whether to grant a temporary restraining order or preliminary injunction, the Court should consider four factors: "(1) whether the movant has shown a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *FirstEnergy Solutions Corp. v. Flerick*, 521 F. App'x 521, 525 (6th Cir. 2013) (citation omitted); *see also Ohio State University v. Thomas*, 738 F. Supp. 2d 743, 748 (S.D. Ohio 2010) (applying test when granting temporary restraining order). These factors are considerations to be balanced collectively, rather than prerequisites that must be met. *Id.* As demonstrated below, each of the factors favors granting the requested temporary restraining order and preliminary injunctive relief in this case.

A.  **There Is A Substantial Likelihood Of Success On The Merits**

1.  **Plaintiffs Will Succeed On Their Federal Computer Fraud and Abuse Act Claim**

The CFAA allows any person who suffers damage or loss as defined in that statute to maintain a civil action against the violator for injunctive or other equitable relief and for damages. 18 U.S.C. § 1030(g). "Employers … are increasingly taking advantage of the CFAA's civil remedies to sue former employees and their new companies who seek a competitive edge through wrongful use of information from the former employer's computer system." *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 510 (3d Cir. 2005) (internal quotation omitted).

Plaintiffs are required to prove five elements, by a preponderance of the evidence, to establish a cause of action under 18 U.S.C. § l030(a)(2)(C). *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009). Specifically, Plaintiffs must demonstrate that: (1) Pircio intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that he (3) thereby obtained information (4) from any protected computer (if the conduct involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value." *Am. Furukawa, Inc. v. Hossain*, 103 F. Supp. 3d 864, 870 (E.D. Mich. 2015) (quoting *Id.*).

a)  **Pircio intentionally accessed a computer.**

Pircio intended to unlawfully obtain FirstEnergy's proprietary and confidential documents when he used Clearsulting's computer to access and download the documents using the Plaintiffs' SharePoint site, an internet-based document management and storage system developed by Microsoft. Logically, Pircio could not have accidentally logged on to the SharePoint site and downloaded the documents to his personal device after his employment with Clearsulting

5

terminated. For example, in *Frisco Med. Ctr., L.L.P. v. Bledsoe*, the court held that the plaintiff established that the defendants intentionally accessed a protected computer where testimony established that the defendant's "transferring files to Dropbox … is a necessarily intentional action[.]" 147 F. Supp. 3d 646, 659 (E.D. Tex. 2015). Pircio's actions are just as intentional here.

> **b) Pircio used Clearsulting's computer to obtain FirstEnergy's information without authorization or at least in excess of his authorized access.**

As the Supreme Court recently explained, § 1030 (a)(2)(C) "provides two ways of committing the crime of improperly accessing a protected computer: (1) obtaining access without authorization; and (2) obtaining access with authorization but then using that access improperly." *Musacchio v. United States*, 136 S. Ct. 709, 713, 193 L. Ed. 2d 639 (2016).

Although CFAA does not define the phrase "without authorization," the Sixth Circuit has interpreted it to mean "without sanction or permission." *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 304 (6th Cir. 2011). In other words, "a person who uses a computer 'without authorization' has no rights, limited or otherwise, to access the computer in question." *Id.* (quoting *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009)). Unlike the phrase "without authorization," the CFAA helpfully defines "exceeds authorized access" as "access[ing] a computer with authorization and ... us[ing] such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). Under this definition, "an individual who is authorized to use a computer for certain purposes *but goes beyond those limitations* ... has 'exceed[ed] authorized access.'" *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 304 (6th Cir. 2011) (citations omitted) (emphasis in original).

Here, when Pircio accessed, downloaded, and retained FirstEnergy's proprietary and confidential documents, he had no rights to access Clearsulting's computer or FirstEnergy's

information and therefore was acting without authorization. (Engelhardt Decl. ¶¶ 5-7). To download the proprietary and confidential information, Pircio had to enter the confidential and password-protected ShareFile site. (*Id.* ¶ 18). Pircio accessed the ShareFile site using a Clearsulting computer after his employment with Clearsulting was terminated. (*Id.*). Therefore, Pircio used the computer to access the ShareFile site without authorization. *See Am. Furukawa, Inc. v. Hossain*, 103 F. Supp. 3d 864, 875–76 (E.D. Mich. 2015). And the Employment Agreement further states that Pircio "shall not, at any time, either during or subsequent to their employment with Clearsulting, directly or indirectly, appropriate, disclose, or divulge any Confidential Information to any person not then employed by Clearsulting." (Employment Agreement § 2.1.3).

### c) Pircio obtained FirstEnergy's proprietary and confidential information.

As the Declarations make clear, Pircio certainly obtained FirstEnergy's proprietary and confidential information from the Plaintiffs' ShareFile site after his employment with Clearsulting terminated. (Engelhardt Decl. ¶ 18). Counsel for Pircio has confirmed that Plaintiff possesses the subject documents. (*Id.* ¶¶ 22, 28). As such, Plaintiffs do not anticipate that this issue is in dispute.

### d) Pircio used a "protected computer" in that it was used for interstate communication to obtain FirstEnergy's proprietary and confidential information.

"Protected computer" means, *inter alia,* a computer "which is used in or affecting interstate or foreign commerce or communication[.]" *See* § 1030(e)(2)(B). "Courts have consistently held that the internet is 'an instrumentality and channel of interstate commerce' such that any computer that is connected to the internet is part of 'a system that is inexorably intertwined with interstate commerce.'" *Freedom Banc Mortg. Servs., Inc. v. O'Harra*, No. 2:11-CV-01073, 2012 WL 3862209, at *6 (S.D. Ohio Sept. 5, 2012). "[N]o additional interstate nexus is required when instrumentalities or channels of interstate commerce are regulated." *Id*. A computer that is

7

connected to the internet therefore satisfies § 1030(e)(2)'s interstate commerce requirement even if the plaintiff used that connection to engage in only intrastate communications. *Id.*

Here, Pircio unlawfully accessed Clearsulting's computer, without authorization, and downloaded FirstEnergy's proprietary and confidential information from an internet-based SharePoint site. (Engelhardt Decl. ¶ 18). Consequently, Pircio used a protected computer as defined in § 1030(e)(2)(B) when violating the CFAA.

### e) As a result of Pircio's conduct, Plaintiffs suffered losses in excess of $5,000 in value during a one-year period.

To meet the injury requirement, Plaintiffs must demonstrate that they (1) suffer a root injury of damage or loss; and (2) suffer one of five operatively-substantial effects set forth in subsection (a)(5)(B)(i)-(v). *P.C. of Yonkers, Inc. v. Celebrations! The Party And Seasonal Superstore, L.L.C.*, No. CIV.A.04-4554 JAG, 2007 WL 708978, at *4 (D.N.J. Mar. 5, 2007). Plaintiffs satisfy both elements of the injury requirement, as Pircio caused losses in excess of $5,000 in value since his unlawful acts. (*See* Mollenshott Aff. ¶ 35; Engelhardt Decl. ¶ 24).

First, Plaintiffs suffered "loss" as defined by 18 U.S.C. § 1030(e)(11). The Sixth Circuit considers the costs of internal investigations into CFAA violations and related damage assessments as such a "loss" under 18 U.S.C. § 1030(e)(11). *See Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1074 (6th Cir. 2014); *see also Experian Mktg. Sols., LLC v. Lehman*, No. 1:15-CV-476, 2015 U.S. Dist. LEXIS 131131, at *8 (W.D. Mich. Sep. 29, 2015) (damage assessment assisted by third party was sufficient to state a loss). Additionally, legal fees incurred responding to a CFAA violation in order to place a plaintiff in its ex ante position are covered losses. *See NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1065-66 (S.D. Iowa 2009).

Here, FirstEnergy and Clearsulting have incurred (and will continue to incur) costs to respond to Pircio's CFAA violation in order to place Plaintiffs in their ex ante position. Plaintiffs

have incurred costs by: obtaining the services of a third-party computer forensic investigator to examine the extent of Defendant's unauthorized accessing of Clearsulting's computers; conducting an internal investigation, utilizing three Clearsulting employees; conducting an internal investigation, utilizing four FirstEnergy employees within its Internal Audit Department; utilizing the time of two FirstEnergy in-house employees and a legal specialist to determine the extent of any privacy issues caused by Pircio's actions; and outside legal fees regarding the same privacy issues. (Mollenshott Aff. ¶¶ 34–35; Engelhardt Decl. ¶ 24).

Second, these losses have exceeded the value set forth in § 1030(c)(4)(A)(i)(I). Under § 1030(c)(4)(A)(i)(I), a plaintiff must establish "loss to one or more persons during a 1-year period … aggregating at least $5,000 in value[.]" Here, the Plaintiffs losses described above were suffered within the past year and have exceeded $5,000.00 in value already. (Mollenshott Aff. ¶ 35; Engelhardt Decl. ¶ 24). As such, Plaintiffs will successfully establish the CFAA's injury requirement.

Because Plaintiffs will have successfully established each element required to succeed on a claim under 18 U.S.C. § l030(a)(2)(C), there is a substantial likelihood that Plaintiffs will succeed on the merits of Count II.

### 2. Clearsulting Will Succeed On Its Breach Of Contract Claim

On February 28, 2020, Pircio entered into an employment agreement with Clearsulting (the "Employment Agreement"). (Engelhardt Decl. ¶ 11). Pircio's Employment Agreement includes confidentiality and nondisclosure covenants, and further provides that "Confidential Information shall include all proprietary and confidential information received from any client or prospective client of Clearsulting." (Employment Agreement §§ 2.1.1 & 2.1.3). In addition, the Employment Agreement specified that Pircio

9

> shall (i) intentionally access only such Confidential Information as is reasonably necessary to perform Employees job functions; and (ii) allow access to Confidential Information under Employee's control only to those co-employees whose job duties and responsibilities reasonably necessitate access to such Confidential Information.

(Employment Agreement § 2.1.2). The Employment Agreement is also clear that "[a]ll Confidential Information provided to the employee … [is] the exclusive property of Clearsulting and shall be returned immediately to Clearsulting upon termination of Employee's employment or upon Clearsulting's request at any time." (Employment Agreement § 2.1.4).

The Employment Agreement's confidentiality provisions are binding and enforceable under Ohio law. *See, e.g.*, *Millennium Health, LLC v. Christopher Roberts*, No. 1:19CV2381, 2020 WL 2814440, at *10 (N.D. Ohio Mar. 4, 2020), report and recommendation adopted sub nom. *Millennium Health, LLC v. Roberts*, No. 1:19 CV 2381, 2020 WL 2812871 (N.D. Ohio May 29, 2020) (citations omitted). "Legitimate business interests are more likely present when an employee has access to confidential information[.]" *Invacare Corp. v. Nordquist*, No. 1:18-CV-62, 2018 WL 2454523, at *4 (N.D. Ohio June 1, 2018), modified in part, No. 1:18-CV-62, 2018 WL 3768278 (N.D. Ohio Aug. 9, 2018). As a result, Clearsulting has a strong likelihood of success on the merits of its claim for Pircio's breaches of the Employment Agreement.

    **3.    FirstEnergy Will Succeed On its Misappropriation of Trade Secrets Claims under 18 U.S.C. § 1836 and O.R.C. § 1333.61**

        **a)  Misappropriation of Trade Secrets Claims under 18 U.S.C. § 1836**

The Defend Trade Secrets Act ("DTSA") provides a private cause of action for owners of misappropriated trade secrets "if the trade secret[s] [are] related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). "Misappropriation" means "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." 18 U.S.C. § 1839(5)(A). The meaning of

"improper" under the statute includes "theft".  18 U.S.C. § 1839(6)(A).  The DTSA defines a trade secret as information for which (1) the owner has taken reasonable measures to keep secret, and (2) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. 18 U.S.C. § 1839(3).

FirstEnergy is likely to succeed on the merits of its Misappropriation of Trade Secrets Claim under 18 U.S.C. § 1836.  FirstEnergy determined that the proprietary and confidential information taken by Pircio, included, without limitation, internal control processes, payment procedures, and sensitive employee and vendor information used in interstate commerce. (Mollenshott Aff. ¶ 20). The downloaded information includes lists of FirstEnergy employee salaries and payments made to vendors, with checking account numbers, and W-9s.  (*Id.*). At all times, Pircio understood that FirstEnergy's proprietary and confidential information was the property of FirstEnergy.  (*Id.* ¶ 15).  At no time after Clearsulting terminated Pircio's employment did Pircio have permission to access FirstEnergy's proprietary and confidential information. (*Id.* ¶ 18).  Pircio acquired this valuable information without Clearsulting and FirstEnergy's knowledge, authorization, or consent, by downloading it *after* his employment was terminated. (*Id.* ¶ 18; Engelhardt Decl. ¶ 18).

Additionally, FirstEnergy took reasonable measures to keep its proprietary and confidential secret, such as restricting access to such information to only FirstEnergy employees who need to know the information to perform their job functions for FirstEnergy. (Mollenshott Aff. ¶ 14). Finally, FirstEnergy's proprietary and confidential information taken by Pircio, has independent economic value and is not generally available, nor ascertainable through proper means, by other persons who can obtain economic value from its disclosure or use, as it included internal control

11

processes, payment procedures, and sensitive employee and vendor information. (*Id.* ¶ 24). For these reasons, FirstEnergy is likely to prevail on its claim for Misappropriation of Trade Secrets Claim under 18 U.S.C. § 1836.

### b) Misappropriation of Trade Secrets Claim under O.R.C. § 1333.61

Under Ohio law, "an injunction may be issued if there is 'actual or threatened' misappropriation of a trade secrets." *Avery Dennison Corp. v. Kitsonas*, 118 F. Supp. 2d 848, 854 (S.D. Ohio 2000) (granting preliminary injunction and citing O.R.C. § 1333.62). Under the Ohio Uniform Trade Secret Act ("OUTSA"), a plaintiff must prove: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret. *See Goken America, LLC v. Bandepalya*, 2014 U.S. Dist. LEXIS 164370, *13-14 (S.D. Ohio 2014) (citing *MEMC Electronic Materials v. Balakrishnan*, 2012 U.S. Dist. LEXIS 128877, 2012 WL 3962905 (S.D. Ohio 2012)). To qualify as a trade secret under the first prong, the information must: (1) derive its value from being generally not known nor readily ascertainable by others who could derive value from it; and (2) be the subject of reasonable efforts to maintain its secrecy. *See id.* (citing O.R.C. § 1333.61(D)).

The Ohio Supreme Court also adopted a number of factors to analyze whether information rises to the level of trade secret. *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St. 3d 396, 2000 Ohio 207, 732 N.E.2d 373, 378 (2000). FirstEnergy is likely to succeed under OUTSA because the documents and information downloaded by Pircio qualifies as trade secrets under Ohio law as it is: "business information or plans, financial information or listing of names, addresses, or telephone numbers . . . ." *See* O.R.C. § 1333.61(D). (Mollenshott Aff. ¶ 20). Furthermore, the information "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic values from its disclosure or use." *See id.* (*Id.* ¶ 24).

Moreover, FirstEnergy took efforts to protect the information by restricting access and prohibiting the copying of its information by Clearsulting employees without FirstEnergy's prior written approval. (Mollenshott Aff. ¶ 13). Further, FirstEnergy required Clearsulting to maintain the confidentiality of its information and protect against any unauthorized access to or use of FirstEnergy's information. (*Id.*). Moreover, the information contained in the documents Pircio took are not generally known to FirstEnergy's competitors and included internal control processes, payment procedures, and sensitive employee and vendor information. (*Id.* ¶¶ 20, 25). FirstEnergy invested substantial time and economic resources into the development of its proprietary and confidential information. (*Id.* ¶ 26).

FirstEnergy can show that the trade secrets were acquired as a result of a confidential relationship and used in an unauthorized manner. Pircio was privy to FirstEnergy's proprietary and confidential information solely through his employment with Clearsulting. (Mollenshott Aff. ¶ 22). Moreover, the *Goken* Court held that "a plaintiff can 'show unauthorized use by pointing to the facts that [the former employee] transferred data on mass storage devices prior to his departure.'" *Goken America,* 2014 U.S. Dist. LEXIS 164370, *16 (quoting *MEMC Electronic Materials*, 2012 U.S. Dist. LEXIS 128877, at *8). Here, Clearsulting's ongoing investigation has thus far concluded that, on July 30, 2020, Pircio downloaded from a Clearsulting file storage site, fifty-seven (57) unique files pertaining to FirstEnergy's trade secrets. (Engelhardt Decl. ¶ 20). Accordingly, FirstEnergy is likely to succeed on the merits of its OUTSA claim.

**B.     A Temporary Restraining Order and Preliminary Injunction Are Necessary To Prevent Irreparable Harm To Plaintiffs**

If a preliminary injunction is not issued, the Plaintiffs will suffer irreparable harm through loss of their goodwill, loss of value of FirstEnergy's confidential information and trade secrets, and loss of reputation in their respective industries. Such damage cannot be fully calculated or

quantified, and "an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make money damages difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

Critically, FirstEnergy will suffer irreparable harm if Pircio is not enjoined from misappropriating its trade secrets. "Courts are typically sensitive to the irreparable harm that trade secret disclosure can cause." *See Goken America,* 2014 U.S. Dist. LEXIS 164370, *17 (citations omitted). FirstEnergy will be harmed by the disclosure of its proprietary and confidential information through the loss of business opportunities and reputation, potential lost revenue, and diminished goodwill among FirstEnergy's employees, vendors, and potential purchasers of FirstEnergy's products and services. (Mollenshott Aff. ¶ 31). Additionally, among other things, the disclosure of salary information for FirstEnergy's employees to competitors in the job market will cause FirstEnergy irreparable harm from the unfair advantage gained by such competitors from the stolen information. (*Id.* ¶ 32). And the disclosure of vendor information will cause irreparable harm from the loss of goodwill from those vendors. (*Id.*). Thus, there is a strong likelihood of irreparable injury for FirstEnergy without a preliminary injunction. Issuing the preliminary injunction will help to maintain legal compliance, protect FirstEnergy's investments in its vendor relations, employees, compliance strategies and other proprietary information.

      C.      **The Balance Of Harms Favors Plaintiffs**

Here, there is no risk of substantial harm to others, but for the reasons stated, the Plaintiffs will face irreparable without injunctive relief. Indeed, Congress authorized trade-secret owners to seek injunctions against actual or threatened misappropriation of trade secrets for products or services in interstate commerce. 18 U.S.C.S. § 1836(b)(1), (3)(A). Likewise, the CFAA authorizes injunctive relief against violators. 18 U.S.C.S. § 1830(g). Consequently, the issuance of a preliminary injunction would not cause substantial harm to Pircio, as he has no right to the

14

information he stole. Any harm to Pircio would be as a direct result of his own actions. He was aware that he did not have authorization to download FirstEnergy's proprietary and confidential information. (Engelhardt Decl. ¶ 18). Further, he was aware of that the documents were confidential, as explicitly set forth in the confidentiality covenant in his Employment Agreement. (Mollenshott Aff. ¶ 15). And within that Employment Agreement, Pircio agreed that if he breached the Employment Agreement, Clearsulting would be entitled to injunctive relief. (Employment Agreement §§ 2.4.2-3). Therefore, the balance of equities favors the Plaintiffs.

### D. The Public Interest Favors An Injunction

"The protection of trade secrets weighs in favor of the public interest." *Goken America,* 2014 U.S. Dist. LEXIS 164370, *20 (citing *Kendall Holdings Ltd. v. Eden Cryogenics LLC*, 630 F.Supp.2d 853, 869 (S.D. Ohio 2008)). Additionally, it is well-settled that enforcement of contractual duties is in the public interest. *See, e.g. Kelly Servs., Inc. v. Noretto*, 495 F. Supp. 2d 645, 660–61 (E.D. Mich. 2007). The public interest would be served by the issuance of an injunction, by discouraging misappropriation of trade secrets and condemning the theft of internal control processes, payment procedures, and sensitive employee and vendor information. (Mollenshott Aff. ¶ 20).

### IV. **CONCLUSION**

For the reasons set forth above, Plaintiffs Clearsulting and FirstEnergy hereby request that this Court grant a temporary restraining order and preliminary injunction prohibiting the further use or disclosure by Pircio of FirstEnergy's trade secret, proprietary, and confidential information and return of all copies of such information in his possession.

Respectfully submitted,

*s/ Gregory J. Phillips*
GREGORY J. PHILLIPS (0077601)
ADDISAH SHERWOOD (0084399)
JOHN DAGON (0098128)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone: 216.363.4500
Facsimile: 216.363.4588
Email: gphillips@beneschlaw.com
asherwood@beneschlaw.com
jdagon@beneschlaw.com

*Attorneys for Plaintiff FirstEnergy Service Company*

*s/ Stephen M. Bales*
STEPHEN M. BALES (0003380)
BRIAN F. KAMPMAN (0092386)
**ZIEGLER METZGER LLP**
1111 Superior Avenue, Suite 1000
Cleveland, OH 44114
(216) 781-5470 | (216) 781-0714 (Fax)
sbales@zieglermetzger.com
bkampman@zieglermetzger.com

*Attorneys for Plaintiff Clearsulting, LLC*