


# Affidavit of L. Mollenshott.docx

| | |
|---|---|
| DocVerify ID: | 8BEF7F2B-6E4A-4642-BF53-3C81E04CC47D |
| Created: | September 01, 2020 10:45:20 -8:00 |
| Pages: | 8 |
| Remote Notary: | Yes / State: OH |

This document is a DocVerify VeriVaulted protected version of the document named above. It was created by a notary or on the behalf of a notary, and it is also a DocVerify E-Sign document, which means this document was created for the purposes of Electronic Signatures and/or Electronic Notary. Tampered or altered documents can be easily verified and validated with the DocVerify veriCheck system. This remote online notarization involved the use of communication technology.

Go to www.docverify.com at any time to verify or validate the authenticity and integrity of this or any other DocVerify VeriVaulted document.

### E-Signature Summary

**E-Signature 1: Laura E. Mollenshott (LEM)**
September 01, 2020 11:07:13 -8:00 [B3D905519560] [173.90.193.151]
lmollenshott@firstenergycorp.com (Principal) (Personally Known)

**E-Signature Notary: Matthew J. Albright (MJA)**
September 01, 2020 11:07:13 -8:00 [1049E2C755BD] [173.89.93.221]
malbright@firstenergycorp.com
I, Matthew J. Albright, did witness the participants named above electronically sign this document.



DocVerify documents cannot be altered or tampered with in any way once they are protected by the DocVerify VeriVault System. Best viewed with Adobe Reader or Adobe Acrobat. All visible electronic signatures contained in this document are symbolic representations of the persons signature, and not intended to be an accurate depiction of the persons actual signature as defined by various Acts and/or Laws.



# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| FIRSTENERGY CORP., | ) CASE NO.: CASENUMBER |
| | ) |
| | ) JUDGE: JUDGENAME |
| and | ) |
| | ) |
| CLEARSULTING LLC, | ) |
| | ) |
| | ) |
| PLAINTIFFS, | ) |
| vs. | ) |
| | ) |
| MICHAEL PIRCIO, | ) |
| | ) |
| | ) |
| DEFENDANT. | ) |
| | ) |
| | ) **AFFIDAVIT OF LAURA E.** |
| | ) **MOLLENSHOTT** |
| | ) |

LAURA E. MOLLENSHOTT, being first duly sworn to testify truthfully, deposes and says that she has personal knowledge of the following facts:

1. I am over the age of eighteen and submit this Declaration in support of the Motion for Temporary Restraining Order and Preliminary Injunction filed by Plaintiffs FirstEnergy Corp. ("FirstEnergy") and Clearsulting LLC ("Clearsulting").

2. I am employed by FirstEnergy Service Company as the Manager, Financial & Shared Services Auditing and have been employed in this role since June 23, 2019.

3. I have knowledge of the facts set forth herein based upon personal knowledge and information made known to me through my work for FirstEnergy, including, without limitation,

from review of FirstEnergy's business records prepared and maintained in the course of FirstEnergy's regularly conducted business activities.

4. If called as a witness, I could and would testify competently thereto under oath.

**A. FirstEnergy's Relationship With Clearsulting and Michael Pircio**

5. In my capacity as Manager, Financial & Shared Services Auditing, I am familiar with FirstEnergy's engagement with Clearsulting for consulting work.

6. In recent years, Clearsulting has provided consulting services to FirstEnergy pursuant to the contract between FirstEnergy and Clearsulting, as modified from time to time.

7. To ensure compliance with its obligations under the Sarbanes-Oxley Act, FirstEnergy has adopted extensive internal accounting controls and, for the past year, contracted with Clearsulting to assist FirstEnergy's Internal Auditing Department in independently testing and validating the sufficiency of certain controls.

8. As part of its consulting work for FirstEnergy, Clearsulting utilized design assessments, which detailed FirstEnergy's existing processes in a number of areas relevant to the Sarbanes-Oxley Act, including Accounts Payable, Cash Management, Payroll, and Tax.

9. Additionally, Clearsulting assisted FirstEnergy's testing as to whether the Sarbanes-Oxley Act controls in place within those four areas performed as designed.

10. Michael Pircio ("Pircio") was an employee of Clearsulting, LLC ("Clearsulting").

11. Pircio assisted with ongoing projects for FirstEnergy, as an employee of Clearsulting.

B.  **FirstEnergy's Precautions to Safeguard its Proprietary and Confidential Information**

12. Because Clearsulting needed access to FirstEnergy's proprietary and confidential information to perform its consulting work, FirstEnergy took substantial precautions to prevent the unauthorized use or disclosure of all such information.

13. For example, FirstEnergy's contract with Clearsulting, *inter alia*, required Clearsulting to maintain the confidentiality of all such information; prohibited the copying of FirstEnergy's information by Clearsulting employees without FirstEnergy's prior written approval; and required Clearsulting to protect against any unauthorized access to or use of FirstEnergy's information.

14. FirstEnergy has taken other reasonable measures to protect and keep secret its proprietary and confidential information, such as restricting access to such information to only FirstEnergy employees who need to know the information to perform their job functions for FirstEnergy.

15. At all times, Pircio understood that FirstEnergy's proprietary and confidential information was the property of FirstEnergy.

C.  **FirstEnergy's Receipt of Notice and Subsequent Investigation of Pircio's Unauthorized Access and Download**

16. On or about August 20, 2020, FirstEnergy received notice from Clearsulting that, on July 30, 2020, Pircio accessed Clearsulting's computers, without authorization, and that he possibly downloaded copies of FirstEnergy's proprietary and confidential information.

17. Later, on August 25, 2020, after further investigation, Clearsulting confirmed to FirstEnergy that, in fact, Pircio had downloaded copies of FirstEnergy's proprietary and

confidential information during his unauthorized access of Clearsulting's computers on July 30, 2020.

18. FirstEnergy did not grant Pircio permission or authority to access the FirstEnergy proprietary and confidential information he downloaded on July 30, 2020.

19. FirstEnergy launched an investigation into the offense and has invested time and money to probe Pircio's unlawful actions.

20. As part of its ongoing investigation, FirstEnergy determined that the proprietary and confidential information taken by Pircio, included, without limitation, internal control processes, payment procedures, and sensitive employee and vendor information used in interstate commerce, such as:

    a. A list of FirstEnergy employee names, their SAP numbers, and their salary information at FirstEnergy, and other documents showing FirstEnergy employee salary figures, both old and new, and salary change dates;

    b. Spreadsheets from Human Resources showing FirstEnergy employee names, their SAP numbers, job titles, positions, supervisors, and locations;

    c. Copies of W-9s for FirstEnergy contractors, FirstEnergy Supplier Profile sheets, and documents containing vendor names, bank account numbers and routing numbers, vendor employee names, emails and phone numbers;

    d. Detailed descriptions of activities and steps taken to complete tax controls to validate completeness and accuracy, including lists of files and inputs used in control performance;

    e. A timeline of SOX testing with control names and numbers;

    f. Computation of interest payments from January through September 2018 and a sample of 20 SAP transactions.

    g. Reviews and approvals of manual wires and tax payments, with the amount of the payments visible, which contained an SAP transaction converted to Excel showing that the sample of wires and tax payments were reviewed by a cash analyst other than the one who entered it;

    h. Full descriptions of payment processes;

    i. A description of control and testing steps, identifying each controls assigned number, a description of the control, and a description of the test steps for the Accounts Payable environment, including process, control number, control name, control description, control significance, test steps, and employee names;

    j. A business process narrative with an embedded file of the Cash Operations process flowchart, which explains the SOX processes assigned to Treasury, outlining the background, responsibilities, systems used, policies referenced, and an explanation of how the controls are performed. It has an appendix describing the manual and monitoring controls, with their control numbers;

    k. Sample SAP transactions converted to Excel, with vendor numbers, document numbers, dates, and payment amounts;

    l. General ledger account numbers, check numbers, payment amounts, dates, payees, payee addresses, bank names, and vendor numbers;

    m. Tests to verify whether SAP background configurations are appropriately set up, including SAP screenshots with employee names and titles;

    n. SAP screenshots, including copies of checks, with the control name, number, description, cost center, and payment information and amounts;

    o. A test spreadsheet reviewing three company codes, which includes employee names and vendor information such as name, employee name, phone number, and payment amount; and

    p. A 404 Internal Control Test Plan & Results for Reports/Queries/Variants which includes SAP screenshots, employee names and positions, and purchasing information, purchase number, amount, purchase order number, items purchased, and dates.

21. Pircio obtained this valuable information without Clearsulting and FirstEnergy's knowledge, authorization, or consent.

22. Pircio was privy to FirstEnergy's proprietary and confidential information solely through his employment with Clearsulting.

23. Before his employment was terminated, Pircio was not at any time assigned work that related to the proprietary and confidential information he unlawfully downloaded.

DocVerify ID: 8BEF7F2B-6E4A-4642-BF53-3C81E04CC47D
www.docverify.com
Page 5 of 8   53C81E04CC47D

24. FirstEnergy's proprietary and confidential information taken by Pircio, has independent economic value and is not generally available, nor ascertainable through proper means, by other persons who can obtain economic value from its disclosure or use.

25. Additionally, FirstEnergy's proprietary and confidential information downloaded by Pircio is not generally known to FirstEnergy's competitors and is information that a reasonable business owner would not want a competitor to know.

26. Plaintiff FirstEnergy invested substantial time and economic resources into the development of its proprietary and confidential information.

27. FirstEnergy also determined that the proprietary and confidential information downloaded by Pircio included several work papers that Clearsulting prepared to test FirstEnergy's controls.

28. The work papers, which compile extensive documents and evidence provided by FirstEnergy to Clearsulting, describe the tests Clearsulting performed as well as Clearsulting's conclusion on the controls' operating effectiveness.

29. In each case, Clearsulting's work papers validated that FirstEnergy's controls were functioning as designed and were effective to achieve Sarbanes-Oxley compliance.

30. FirstEnergy has been and will be irreparably and immediately harmed if Pircio continues to misappropriate FirstEnergy's proprietary and confidential information.

31. FirstEnergy will be harmed by the disclosure of its proprietary and confidential information through the loss of business opportunities and reputation, potential lost revenue, and diminished goodwill among FirstEnergy's employees, vendors, and potential purchasers of FirstEnergy's products and services.

32. Among other things, the disclosure of salary information for FirstEnergy's employees to competitors in the job market will cause FirstEnergy irreparable harm from the unfair advantage gained by such competitors from the stolen information. And the disclosure of vendor information will cause irreparable harm from the loss of goodwill from those vendors.

33. Pircio's theft caused injury to FirstEnergy including the cost of responding to the offense, launching an investigation and conducting a damage assessment, and determining what Pircio took, how he took it, and how to prevent it from happening in the future.

34. To date, FirstEnergy has incurred more than five thousand dollars in costs investigating the offense, assessing the damage, and responding to Pircio's unauthorized access and download of FirstEnergy's proprietary and confidential information. The costs incurred include the internal investigation conducted by four FirstEnergy employees within its Internal Audit Department; the time of two FirstEnergy in-house employees and a legal specialist; and outside legal fees.

FURTHER AFFIANT SAYETH NAUGHT

Date: September 1, 2020,

*Laura E. Mollenshott*
Signed on 2020/09/01 11:07:13 -8:00

_____

Laura E. Mollenshott

STATE OF OHIO            )
                         )
COUNTY OF SUMMIT         )

      The foregoing instrument was acknowledged before me this First day of September, 2020 by Laura Mollenshott.  No oath or affirmation was administered to the signor as a part of this notarial act.



_____
Notary Signature



09/01/2020

8

13751654 v3