IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FIRSTENERGY CORP., et al. | ) | CASE NO. |
| | ) | |
| Plaintiffs, | ) | JUDGE |
| | ) | |
| v. | ) | |
| | ) | **DECLARATION OF MONICA** |
| MICHAEL PIRCIO, | ) | **ENGELHARDT** |
| | ) | |
| Defendant. | ) | |

I submit this declaration in support of Plaintiffs FirstEnergy Corp. ("FirstEnergy") and Clearsulting LLC ("Clearsulting") preliminary injunctive relief.  The statements in this declaration are based upon my personal knowledge.  I am competent to make this declaration.

1. I am a Director at Clearsulting, responsible for overseeing internal operations of the company, including but not limited to the areas of: recruiting and performance management, maintaining company policies and procedures, payroll, resource management, accounting and reporting.

2. Clearsulting is a management consulting firm specializing in Finance Effectiveness, Financial Systems, Risk Advisory, Automation & Analytics, and Healthcare.

3. Since approximately June 2019, Clearsulting has provided consulting services to FirstEnergy.

4. As part of its consulting work for FirstEnergy, Clearsulting utilized design assessments, which detailed FirstEnergy's existing processes in four areas relevant to the Sarbanes-Oxley Act: Accounts Payable, Cash Management, Payroll, and Tax.  Additionally, Clearsulting assisted FirstEnergy's testing of whether the Sarbanes-Oxley Act controls in place

within those areas performed as designed.

5. Clearsulting stores FirstEnergy's confidential information on the Plaintiffs' ShareFile site, which is highly confidential and password protected.

6. Clearsulting does not permit non-employees to access the password-protected ShareFile site.

7. Clearsulting does not allow non-employees to access its computers.

8. Clearsulting took precautions to protect the security and secrecy of FirstEnergy's proprietary and confidential information. Among other measures, Clearsulting required its employees, including Defendant Michael Pircio ("Pircio"), to sign employment agreements in which they reaffirmed the confidentiality of FirstEnergy's information and agreed to access it only as was reasonably necessary to perform the employee's job functions.

9. Pircio's employment with Clearsulting began on March 16, 2020 and ended on July 30, 2020.

10. Pircio had the job title "2 Senior Analyst" while employed by Clearsulting and was responsible for preparing information technology ("IT") design assessment documents and conducting testing on IT controls at FirstEnergy. Specifically, Pircio participated in Clearsulting's audit and validation of certain FirstEnergy processes and procedures for Sarbanes-Oxley compliance.

11. On February 28, 2020, Pircio entered into an employment agreement with Clearsulting (the "Employment Agreement").

12. The Employment Agreement includes confidentiality and nondisclosure covenants. Specifically, the Employment Agreement provides in pertinent part:

> Employee shall not, at any time, either during or subsequent to their employment with Clearsulting, directly or indirectly, appropriate,

2

>disclose, or divulge any Confidential Information to any person not then employed by Clearsulting.

(Employment Agreement § 2.1.3.)

13. The Employment Agreement further provides that "Confidential Information shall include all proprietary and confidential information received from any client or prospective client of Clearsulting." (Employment Agreement § 2.1.1.)

14. The Employment Agreement further specified that Defendant:

>shall (i) intentionally access only such Confidential Information as is reasonably necessary to perform Employees job functions; and (ii) allow access to Confidential Information under Employee's control only to those co-employees whose job duties and responsibilities reasonably necessitate access to such Confidential Information.

(Employment Agreement § 2.1.2)

15. Moreover, the Employment Agreement is clear that "[a]ll Confidential Information provided to the employee … [is] the exclusive property of Clearsulting and shall be returned immediately to Clearsulting upon termination of Employee's employment or upon Clearsulting's request at any time." (Employment Agreement § 2.1.4)

16. The Employment Agreement further states:

>Employee acknowledges a breach of their obligations under this Agreement will result in great, irreparable, and continuing harm and damage to Clearsulting for which there is no adequate remedy at law.
>
>\*   \*   \*
>
>Employee agrees that in the event Employee breaches this Agreement, Clearsulting shall be entitled to seek, from any court of competent jurisdiction, preliminary and permanent injunctive relief to enforce the terms of this Agreement, in addition to any and all monetary damages allowed by law.

(Employment Agreement §§ 2.4.2-3.)

3

17. At approximately 9:55 a.m., on July 30, 2020, Clearsulting terminated Defendant's employment, both verbally and in writing.

18. After Clearsulting terminated Pircio's employment, Pircio unlawfully accessed Clearsulting's computer, without authorization, and downloaded FirstEnergy's proprietary and confidential information from an internet-based SharePoint site, including but not limited to internal control processes, payment procedures, and sensitive employee and vendor financial information.

19. The proprietary and confidential information downloaded by Defendant includes several work papers that Clearsulting prepared to test FirstEnergy's controls. The work papers, which compile extensive documents and evidence provided by FirstEnergy to Clearsulting, describe the tests Clearsulting performed as well as Clearsulting's conclusion on the controls' operating effectiveness. In each case, Clearsulting's work papers validated that FirstEnergy's controls were functioning as designed and were effective to achieve Sarbanes-Oxley compliance.

20. Clearsulting has thus far concluded that, on July 30, 2020, after his employment was terminated, Pircio knowingly and improperly downloaded, from a Clearsulting file storage site, fifty-seven (57) unique files containing, among other things, FirstEnergy's internal control processes, payment procedures, and sensitive employee and vendor information.

21. On August 20, 2020, Clearsulting notified Pircio of its ongoing investigation, demanded that he contact Clearsulting, and further demanded that he delete any confidential client information or data in his possession or control.

22. To date, Pircio has refused to comply with Clearsulting's requests. Instead, Pircio's attorney responded in a letter asserting that Pircio's conduct did not violate federal law.

23. Promptly after Clearsulting discovered that Pircio had taken proprietary and

4

confidential information belonging to FirstEnergy, Clearsulting communicated the initial findings of its ongoing investigation to FirstEnergy.

24. Clearsulting has incurred costs (and will continue to incur costs) of more than five thousand dollars to investigate the offense, assess the damage, and respond to Pircio's unauthorized access and download of FirstEnergy's proprietary and confidential information. The costs incurred include the services of a third-party computer forensic investigator to examine the extent of Defendant's unauthorized accessing of Clearsulting's computers; internal investigation conducted by three Clearsulting employees, including myself; and consulting and legal fees.

25. Clearsulting will be harmed by the disclosure of this information through the loss of business opportunities and reputation, potential lost revenue, and diminished goodwill among Clearsulting's employees, vendors, and potential purchasers of Clearsulting's products and services.

26. Attached hereto as **Exhibit 1** is a true and accurate copy of the Employment Agreement.

27. Attached hereto as **Exhibit 2** is a true and accurate copy of the e-mail to Michael Pircio from Clearsulting dated August 20, 2020 demanding that Pircio delete any confidential client information or data in his possession or control.

28. Attached hereto as **Exhibit 3** is a true and accurate copy of the Letter from Vince McKnight to Jessica Hardy dated August 21, 2020.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: September 1, 2020

*Monica C Engelhardt*
Monica Engelhardt

# Exhibit 1

# EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement"), dated 02/28/2020 ("Effective Date"), is executed by <u>Michael</u> <u>Pircio</u>, an individual ("Employee"). Employee may be individually referred to as a "Party".

## RECITALS

A. Clearsulting, LLC ("Clearsulting", "the Firm") is an Ohio limited liability company with its principal operations located in the state of Ohio and doing business throughout the United States.

B. Clearsulting desires to employ Employee, and Employee agrees to accept such employment, in the position of 2 Senior Analyst for Clearsulting.

## AGREEMENT

**1.     Defend Trade Secret Act Trade Secret Disclosure Notice.**

NOTICE is hereby given that this agreement does not affect any immunity under 18 U.S.C. § 1833(b)(1) or (2). For the purposes of these subsections only, which are reproduced below, individuals performing work as contractors or consultants are considered to be employees.

(1) An individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(2) An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order.

**2.      Restrictive Covenants.**  Employee's obligations contained in this section shall be referred to as the "Restrictive Covenants."

    **2.1     Confidentiality.**

        **2.1.1    Definition of Confidential Information.** Clearsulting is in the business of providing professional services to other businesses including management consulting, professional advisory, solution implementation,

project management and execution, and the like ("Clearsulting Business"). Clearsulting has built an established and extensive trade and reputation with respect to its business. Clearsulting has developed and continues to develop commercially valuable technical and non-technical information ("Confidential Information") that is proprietary and confidential and/or constitutes Clearsulting's "trade secrets" within the meaning of the Defend Trade Secrets Act, 18 U.S.C. 1839. Such Confidential Information, which is vital to the success of Clearsulting's business includes, but is not limited to: financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, systems, configurations, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing, manuals, methods, techniques, processes, intellectual property, patents, patents-pending, software, research, know-how, identities of customers and prospective customers, suppliers and prospective suppliers, methods of sales, marketing research and data, cost information, financial information, business plans, specialized requests of customers, and other materials and documents developed by Clearsulting. Furthermore, Confidential Information shall include all proprietary and confidential information received from any client or prospective client of Clearsulting.

**2.1.2   Access to Confidential Information.** Employee shall: (i) intentionally access only such Confidential Information as is reasonably necessary to perform Employee's job functions; and (ii) allow access to Confidential Information under Employee's control only to those co-employees whose job duties and responsibilities reasonably necessitate access to such Confidential Information.

**2.1.3   Nondisclosure or Use of Confidential Information.** Employee shall not, at any time, either during or subsequent to their employment with Clearsulting, directly or indirectly, appropriate, disclose, or divulge any Confidential Information to any person not then employed by Clearsulting, unless authorized or directed to do so by Clearsulting.  If Clearsulting authorizes or directs Employee to disclose Confidential Information to any third party, Employee must ensure a signed confidentiality agreement for the benefit of Clearsulting is or has been obtained from the third party to whom Confidential Information is being disclosed and all Confidential Information disclosed is clearly marked "Confidential."

**2.1.4   Return of Confidential Information.** All Confidential Information provided to Employee, and all documents and things prepared by Employee in the course of Employee's employment, including but not limited to, correspondence, manuals, letters, notes, lists, notebooks, reports,

analyses, flow-charts, proposals, planners, calendars, schedules, discs, data tapes, financial plans and information, business plans, presentations, and other documents and records, whether in hard copy, magnetic media, or otherwise, and any and all copies thereof, are the exclusive property of Clearsulting and shall be returned immediately to Clearsulting upon termination of Employee's employment or upon Clearsulting's request at any time.

**2.2     Non-Solicitation.**

(a) Employee acknowledges that, because of the nature of your work for Clearsulting, Employee will develop, learn of, have access to, or be provided with Confidential Information. You further acknowledge that your solicitation or serving of certain Clearsulting clients or potential clients after the termination of your employment inevitably would involve the unauthorized use or disclosure of Confidential Information, and impair the protectable relationships and goodwill of Clearsulting. Accordingly, you agree that, for two (2) years following your departure from Clearsulting for any reason, you will not directly or indirectly solicit, accept as a client, or perform services of any type within Clearsulting's Business for, any person or entity: (i) for which you provided services as an employee of Clearsulting or that received the benefit of such services at any time during the two (2) years prior to Employee's departure; or (ii) for which Employee participated in a proposal to provide services at any time during the two (2) years prior to Employee's departure. Employee further agrees that you will not assist others in such solicitation or performance of services. It shall not be relevant that a person or entity desires or prefers that someone other than Clearsulting render services or that the person or entity is already served by you or any third party with which you become associated.

(b) Or utilize any proprietary client or prospect databases owned by or licensed to Clearsulting, for any business enterprise which is the same or substantially similar to Clearsulting's Business for a period of two (2) years after separation date from Clearsulting;

(c) Or (i) solicit or otherwise induce any person employed or engaged by Clearsulting to terminate their employment or engagement with Clearsulting for a period of two (2) years after termination date from Clearsulting. (ii) Employee further agrees that they will not assist others in such solicitation of any person employed or engaged by Clearsulting to terminate their employment or engagement with Clearsulting for a period of two (2) years after termination date from Clearsulting.

**2.3     Work Made For Hire.** Any product, results of Employee's employment, inventions, discovery, improvements, innovations, copyrights,

trademarks, patents, trade secrets, design or intellectual property created or developed, in whole or in part, during the course of Employee's employment (the "Work") shall be considered work made for hire. Any and all such Work (including all rights therein) belongs to and shall be the sole and exclusive property of Clearsulting. If for any reason the Work would not be considered a work made for hire under applicable law, Employee does hereby sell, assign and transfer to Clearsulting or its successors or assigns the entire right, title and interest to the Work and any registrations and copyright, trademark or patent applications relating thereof, and in and to all works based upon, derived from, or incorporating the Work, throughout the world.

**2.4** **Enforcement.**

**2.4.1** **Reasonableness of Restrictions.** Employee acknowledges compliance with this Agreement is reasonable and necessary to protect Clearsulting's legitimate business interests, including but not limited to goodwill.

**2.4.2** **Irreparable Harm.** Employee acknowledges a breach of their obligations under this Agreement will result in great, irreparable, and continuing harm and damage to Clearsulting for which there is no adequate remedy at law.

**2.4.3** **Injunctive Relief.** Employee agrees that in the event Employee breaches this Agreement, Clearsulting shall be entitled to seek, from any court of competent jurisdiction, preliminary and permanent injunctive relief to enforce the terms of this Agreement, in addition to any and all monetary damages allowed by law.

**2.4.4** **Extension of Covenants.** In the event Employee violates any one or more of the Restrictive Covenants in this Agreement, Employee agrees the running of the term of the Restrictive Covenants so violated shall be tolled during the period(s) of any such violation and the pendency of any litigation arising out of any such violation.

**2.4.5** **Judicial Modification.** Employee and Clearsulting have attempted to limit Employee's right to compete only to the extent necessary to protect Clearsulting from unfair business practices and/or unfair competition, but recognize reasonable people may differ in making such a determination. Consequently, Employee and Clearsulting hereby agree that, if the limitation of any of the Restrictive Covenants is determined to be overly broad, a court or other trier of fact may modify and enforce the restrictive Covenants to the extent it believes reasonable under the circumstances existing at that time.

> **2.4.6 Survival.** The Restrictive Covenants shall survive termination of this Agreement and termination of Employee's employment and shall govern all disputes arising hereunder.

**3. Signing Bonus.** If Employee receives a Signing Bonus, if, on or prior to the three (3) year anniversary of the Effective Date, Employee is terminated or resigns from employment with Clearsulting for any reason, Employee must repay one-hundred percent (100%) of the Signing Bonus to Clearsulting within thirty (30) days of Employee's termination or resignation of employment.

**4. Entire Agreement.** This Agreement is intended to be the final, complete, and exclusive statement of the terms of Employee's employment with Clearsulting and may not be contradicted by evidence of any prior or contemporaneous statements or agreements. To the extent that the practices, policies, or procedures of Clearsulting, now or in the future, apply to Employee and are inconsistent with the terms of this Agreement, the provisions of this Agreement shall control. Any subsequent change in Employee's duties, position, or compensation will not affect the validity or scope of this Agreement.

**5. Amendments; Waivers; Remedies.** This Agreement may not be amended or waived except by a writing signed by Employee and by a duly authorized representative of Clearsulting other than Employee. Failure to exercise any right under this Agreement shall not constitute a waiver of such right. Any waiver of any breach of this Agreement shall not operate as a waiver of any subsequent breaches. All rights or remedies specified for a Party herein shall be cumulative and in addition to all other rights and remedies of the Party hereunder or under applicable law.

**6. Assignment; Binding Effect.**

> **6.1** The performance of Employee is personal hereunder, and Employee agrees that Employee shall have no right to assign and shall not assign or purport to assign any rights or obligations under this Agreement. This Agreement may be assigned or transferred by Clearsulting, and nothing in this Agreement shall prevent the consolidation, merger, or sale of Clearsulting or the sale of any of its assets.

> **6.2** Subject to the foregoing restriction on assignment by Employee, this Agreement shall inure to the benefit of and be binding upon each of the Parties, the affiliates, officers, directors, agents, successors and assigns of Clearsulting, and the heirs, devisees, spouses, legal representatives and successors of Employee.

**7. Notices.** All notices or other communications required or permitted hereunder shall be made in writing and shall be deemed to have been duly given if delivered (i) by hand; or (ii) by a nationally recognized overnight courier service; or (iii) by United States first class registered or certified mail, return receipt requested, to the principal address of the other party. The date of notice shall be deemed to be the earlier of (i) actual receipt of notice by

any permitted means; or (ii) five business days following dispatch by overnight delivery service or the United States Mail.  Employee shall be obligated to notify Clearsulting in writing of any change in Employee's address.

**8. Severability.**  If any provision of this Agreement shall be held by a court to be invalid, unenforceable, or void, such provision shall be enforced to the fullest extent permitted by law, and the remainder of this Agreement shall remain in full force and effect.  In the event that the time period or scope of any provision is declared by a court or arbitrator of competent jurisdiction to exceed the maximum time period or scope that such court or arbitrator deems enforceable, then such court or arbitrator shall reduce the time period or scope to the maximum time period or scope permitted by law.

**9. Governing law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio, without regard to principles of conflicts of laws.

**10. Interpretation.**  This Agreement shall be construed as a whole, according to its fair meaning, and not in favor of or against any Party. Sections and section headings contained in this Agreement are for reference purposes only, and shall not affect in any manner the meaning or interpretation of this Agreement.  Whenever the context requires, references to the singular shall include the plural and the plural the singular.

**11. Authority.**  Employee represents and warrants that such party has the right, power, and authority to enter into and execute this Agreement and to perform and discharge all of the obligations hereunder, and this Agreement constitutes the valid and legally binding agreement and obligation of such party and is enforceable in accordance with its terms.

**12. Attorneys' fees.**  In the event of any controversy or claim arises out of this Agreement to enforce the terms and conditions of this Agreement or arising from the breach of any provision hereof, the prevailing party will be entitled to receive from the other party all costs, damages, and expenses incurred by the prevailing party, including reasonable attorneys' fees.

EMPLOYEE ACKNOWLEDGES EMPLOYEE HAS HAD THE OPPORTUNITY TO CONSULT LEGAL COUNSEL CONCERNING THIS AGREEMENT AND REPRESENTS THAT THEY HAVE READ AND UNDERSTAND THE AGREEMENT, IS FULLY AWARE OF ITS LEGAL EFFECT, AND HAVE ENTERED INTO THE AGREEMENT FREELY BASED ON EMPLOYEE'S OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS OR PROMISES OTHER THAN THOSE CONTAINED IN THIS AGREEMENT.

**IN WITNESS WHEREOF, Employee has executed this Agreement by affixing Employee's signature to it below:**

*[signature]*

Michael Pircio

# Exhibit 2

| | |
|---|---|
| **From:** | Jessica Hardy |
| **To:** | Michael Pircio |
| **Cc:** | Brian F. Kampman |
| **Subject:** | Rescindment of Severance Agreement |
| **Date:** | Thursday, August 20, 2020 3:14:09 PM |

Michael,

This note is to inform you that, effective immediately, your severance agreement with Clearsulting LLC is rescinded.

After performing an internal review of activity by a terminated employee, we found that 57 unique files, unrelated to your direct work duties and responsibilities were downloaded by you from a Clearsulting file storage site on July 30, 2020, after notice of your immediate termination was conveyed to you orally and in writing. These unique files included client financial files and documents.

The transfer and/or retention of these files to any personal storage location or external source other than Clearsulting LLC would be, in our view, not only a breach of the Employment Agreement you signed on February 28, 2020 but also a violation of Ohio and federal law. As described in the Notice of Termination sent to you on July 30, 2020, any confidential information of Clearsulting and clients are proprietary and may not be used by you in any way, per the Employment Agreement.

You are directed to notify us immediately (no later than 12:00 pm EDT on August 21, 2020) whether you transferred and/or are in retention of any Clearsulting or client files, and subsequently delete any confidential information or data that you possess or control.

Clearsulting's investigation into this incident is on-going and Clearsulting's rights and remedies are hereby reserved.

**Jessica Hardy**
Mobile: 330-612-5114
Email: jessica.hardy@clearsulting.com
Site: www.clearsulting.com



**CONFIDENTIALITY NOTICE:**
The information transmitted, including any attachments, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged information. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited, and all liability arising therefrom is disclaimed. If you received this in error, please notify the sender and immediately and permanently delete this message and any attachments from any computer. Clearsulting does not opine on financial statements or provide tax advice for any jurisdiction.

# Exhibit 3



**Sanford Heisler Sharp, LLP**
700 Pennsylvania Ave. SE, Suite 300
Washington, D.C. 20003
Telephone: (202) 499-5200
Fax: (202) 499-5199
www.sanfordheisler.com

*H. Vincent McKnight Jr.,* DC Managing Partner
(202) 499-5211
vmcknight@sanfordheisler.com

New York | Washington D.C. | San Francisco | San Diego | Nashville | Baltimore

August 21, 2020

**VIA EMAIL**
Jessica Hardy
Clearsulting
jessica.hardy@clearsulting.com

Re:   Michael Pircio

Dear Ms. Hardy:

Please be advised that my firm represents Michael Pircio, and I kindly ask that you direct any future correspondence to Mr. Pircio to me.

In response to your email to Mr. Pircio dated August 20, 2020, Mr. Pircio is indeed in possession of a number of Clearsulting documents that potentially show a violation of law.

Mr. Pircio has shared these documents with his counsel; we in turn have shared these documents with a government agency. As reflected in the terms of the employment agreement signed by Mr. Pircio, he is not prohibited from sharing confidential information with an attorney or government official for purposes of reporting or investigating a suspected violation of law. Indeed, any restrictive covenant that prohibits sharing information and/or documentation with federal law enforcement agencies would be unenforceable under federal law, as it undermines and counteracts the investigative capacities of the government.

Mr. Pircio has not shared any company information or documents with anyone other than his counsel and, through his counsel, with government officials. Please bear in mind that, in light of these protected activities, Mr. Pircio is protected against any retaliatory conduct by Clearsulting and its employees under federal whistleblower laws.

Please do not hesitate to contact me if you have any questions. I can be reached at (202) 499-5211 or vmcknight@sanfordheisler.com.

Sincerely,

Vince McKnight