# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **FIRSTENERGY CORP.**, *et al.*, | Case No. 1:20-cv-01966-JPCV |
| Plaintiffs/Counterclaim Defendants, | Judge J. Philip Calabrese |
| v. | |
| **MICHAEL PIRCIO**, | |
| Defendant/Counterclaimant. | |

### DEFENDANT MICHAEL PIRCIO'S RESPONSE IN OPPOSITION TO COUNTERCLAIM DEFENDANT CLEARSULTING LLC'S MOTION TO DISMISS

HAUSER LAW LLC
Laura A. Hauser (0041354)
3713 Longwood Ct.
Cleveland Heights, OH 44118
Telephone: (216) 536-8810
laura@hauserlawllc.com

DANN LAW
Marc E. Dann (0039425)
Brian D. Flick (0081605)
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Defendant Michael Pircio*

**ARGUMENT**

I.    **FACTUAL BACKGROUND**

Defendant/Counterclaimant Michael Pircio ("Pircio") was an employee of Plaintiff/Counterclaim Defendant Clearsulting LLC ("Clearsulting") from March 2020 until his termination at the end of July 2020. (*See* Counterclaims, Dkt. 14, ¶ 4). Pircio was employed as a Senior IT Auditor and was responsible for the documentation and assessment of key audit risks, identifying key risks and mitigating factors of potential investments, and performing plan studies of procedures, inventory control, etc. (Dkt. 14, ¶ 4). Plaintiff/Counterclaim Defendant FirstEnergy Corp. ("FirstEnergy") retained Clearsulting to perform financial and IT audits and virtually all of the internal auditing process was managed by Clearsulting. (Dkt. 14, ¶ 7).

On or about July 20, 2020, Pircio learned from various news media outlets of the federal criminal indictment alleging that Ohio House Speaker Larry Householder, along with several aides and lobbyists, had orchestrated a racketeering conspiracy that included the efforts to enact what was known as House Bill 6 – Ohio legislation intended to provide over $1 billion in funding to FirstEnergy's former subsidiary, FirstEnergy Solutions ("FES"). (Dkt. 14, ¶ 9). Upon learning about these allegations, Pircio realized that Clearsulting would have been tasked with auditing FirstEnergy financial statements, including the reporting of payments funneled to Householder and his co-conspirators by FirstEnergy and related entities. (Dkt. 14, ¶ 10).

Pircio, relying on his experience as an IT auditor and in performing regulatory and operations auditing, reviewed the instructions that FirstEnergy gave to Clearsulting for the 2019 audit engagement and reviewed the resulting audit. (Dkt. 14, ¶ 11). Upon his review of those materials, Pircio observed that the 2019 audit of FirstEnergy may have violated one or more federal statutes. (Dkt. 14, ¶ 11). Pircio had serious concerns whether or not scope of the 2019 audit of

FirstEnergy was deliberately limited in a way that was not justified in light of the contractual relationship between FES and FirstEnergy that required FirstEnergy to provide auditing and compliance services for FES. (Dkt. 14, ¶ 12).

On or about July 23, 2020, Pircio contacted Clearsulting director Sean Stefancin ("Stefancin") through Skype instant messenger to address his concerns. (Dkt. 14, ¶ 13). In this conversation, Pircio not only notified Stefancin of the issue, but provided Stefancin with details in written form. (Dkt. 14, ¶ 13). Pircio followed up with a telephone conversation with Clearsulting partner Adam Hohla ("Hohla") wherein he relayed the same concerns about the scope of the 2019 FirstEnergy audit. (Dkt. 14, ¶ 13).

On July 30, 2020, shortly after Pircio's expression of concern to Clearsulting's senior management about the scope of the 2019 FirstEnergy audit, Clearsulting terminated Pircio. (Dkt. 14, ¶ 14). Pircio completed his outstanding tasks and his access to Clearsulting and FirstEnergy data and documents was shut off on July 31, 2020. (Dkt. 14, ¶ 15). Clearsulting compensated Pircio as an employee through July 31, 2020. (Dkt. 14, ¶ 16). As permitted by his employment contract, Pircio collected files from the Clearsulting database relating to the 2019 internal audit and subsequently submitted a report and claims to federal government officials. (Dkt. 14, ¶¶ 17, 19-22). On September 1, 2020, Plaintiffs further retaliated against Pircio by filing the instant matter and publicly exposing Pircio as a whistleblower. (Dkt. 14, ¶ 24).

## II.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

2

Courts must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

The Counterclaims meet and exceed these standards.

### III. PIRCIO PLAUSIBLY ALLEGES A CLAIM UNDER THE OHIO WHISTLEBLOWER STATUTE

"The Ohio Whistleblower Act prohibits an employer from retaliating against an employee who reports the employer's wrongdoing." *Avery v. Joint Twp. Dist. Mem'l Hosp.*, 286 F. App'x 256, 261 (6th Cir. 2008). In order to establish a violation of the Ohio Whistleblower Act, a "plaintiff must first make a prima facie case by showing that 1) he or she engaged in activity which would bring him or her under the protection of the statute, 2) was subject to an adverse employment action and 3) there was a causal link between the protected activity and the adverse employment action." *Klepsky v. UPS*, 489 F.3d 264, 271 (6th Cir. 2007) (quoting *Wood v. Dorcas*, 6th Dist. Lucas No. L-00-1122, 757 N.E.2d 17, 23 (Ohio Ct. App. 2001)). "R.C. 4113.52, provides specific procedures an employee must follow to gain statutory protection as a whistleblower." *Contreras v. Ferro Corp.*, 652 N.E.2d 940, 942-943 (Ohio 1995).

An employee cannot claim the protection of the Ohio Whistleblower Act if the employee does not strictly adhere to the notice requirements of R.C. 4113.52(A)(1). *Herrington v. DaimlerChrysler Corp.*, 262 F. Supp. 2d 861, 866 (N.D. Ohio 2003) (citing *Contreras*). A review of these two cases shows that "strict compliance" refers to the requirement that the employee notify the employer before involving outside parties. In *Herrington*, the court held that the employee did not "strictly comply with the dictates of O.R.C. § 4113.52" because he contacted OSHA before submitting a written report to his supervisor. *Id.* In *Contreras*, the Ohio Supreme Court found that the employee did not comply with R.C. § 4113.52 because "he did not report the criminal activity

3

to his employer, orally or in writing, until after he revealed the activity to outsiders." *Herrington*, 262 F. Supp. 2d at 866 (examining *Contreras*).

Clearsulting attempts to improperly expand the holding of *Herrington* and *Contreras* to allow it to avoid Pircio's claims on technicalities. "When the General Assembly enacts a statute, 'it is presumed that … [a] just and reasonable result is intended.'" *Fox v. City of Bowling Green*, 668 N.E.2d 898, 901 (Ohio 1996) (citing R.C. 1.47(C)). Dismissing a statutory claim where the employer had the requisite notification and details to handle the situation, and where the employee raised these concerns first with the employer, instead of involving outside parties like in *Herrington* and *Contreras*, would produce a result that is neither just nor reasonable.

In *McGonagle v. Sunrise Foods, Inc.*, Franklin No. 13-CV-010618, 2015 Ohio Misc. LEXIS 8442 (Ct. Com. Pl. Apr. 1, 2015), the court examined the purpose of Ohio Whistleblower Act while addressing the intent of the Ohio Supreme Court in *Contreras*. Strict compliance with the statute means that the employee must give the employer the opportunity to take corrective actions before involving "outsiders". *McGonagle*, 2015 Ohio Misc. LEXIS 8442, at *28-29. The facts in the cases cited by Clearsulting highlight this obvious point. *See Contreras*, 652 N.E.2d at 945 ("[A]ppellant's status as a whistleblower cannot be maintained as he notified outside authorities prior to notifying his superiors or other responsible corporate officers."); *Herrington*, 262 F. Supp. 2d at 866 ("There is no evidence in the record showing that plaintiff submitted a written report to any representative of the defendant before his January 14, 2002, meeting with OSHA, and there is no evidence that plaintiff submitted a written report to OSHA. Consequently, plaintiff did not 'strictly comply with the dictates of O.R.C. § 4113.52.'"). In contrast, Pircio's allegations show that he both orally notified and provided a written report to his supervisors before reporting his concerns to "outsiders".

4

As further discussed, *infra*, Pircio plausibly alleges that he engaged in activity that would bring him under the protection of the statute: he raised compliance issues with management at Clearsulting, collected evidence of violations, communicated with appropriate enforcement authorities in reporting violations, refused to engage in unlawful conduct, and participated in what are ongoing enforcement proceedings by making a complaint to a federal government official. (Dkt. 14, ¶¶ 12-13, 34). Upon contacting his supervisors and Clearsulting's senior leadership with his concerns about how the scope of Clearsulting's work for FirstEnergy may be implicated in the FirstEnergy bribery scandal and may have violated various federal statutes, Clearsulting retaliated against Pircio by first terminating him, and then suing him. (Dkt. 14, ¶¶ 15, 24, 35-36).

### A. Pircio's Skype instant messenger session provided both oral and written notice to his supervisor.

R.C. 4113.52(A)(1)(a) requires that an employee both orally notify a supervisor or other responsible officer of the employer of the violation and file a written report with that supervisor or officer that provides sufficient detail to identify and describe the violation. Ohio's Sixth District Court of Appeals has defined a report as "delivery of accumulated information to a proper authority with an expectation that such authority will act on the information set forth." *Wood*, 757 N.E.2d at 22.

In *Bear v. Geetronics, Inc.*, 12th Dist. Butler No. CA92-03-051, 614 N.E.2d 803, 806 (Ohio Ct. App. 1992), disapproved on other grounds by *Kulch v. Structural Fibers*, 677 N.E.2d 308 (Ohio 1997), the court explained the importance of the requirement for both an oral notification and written report:

> The necessity that the employee fulfill both requirements is obvious. Oral notification is needed to establish a direct, personal contact between an official in a position of responsibility with the employer and the employee who is aware of the violation. The written report, on the other hand, is required to show that notice of the violation was given and, equally as important, to provide the employer with

5

> the specific facts surrounding the infraction so that the employer may formulate and implement the necessary corrective measures. The failure on the employee's part to satisfy either one of these two requirements, but in particular the written notice, hampers an employer's ability to quickly and effectively rectify the situation.

R.C. 4113.52 was enacted on June 29, 1988. *See Wing v. Anchor Media, Ltd.*, 570 N.E.2d 1095, 1100 (Ohio 1991). As the statute was enacted before the widespread adoption of currently available electronic communication methods, oral notification was limited to telephone or personal conversation and written communication was limited to a letter. The use of an oral notification without a written report in 1988, or vice versa, would naturally "hamper[] an employer's ability to quickly and effectively rectify the situation." *Bear*, 614 N.E.2d at 806.

On July 23, 2020, Pircio had a Skype instant messenger session with Clearsulting director Sean Stefancin to express his concerns about the scope of Clearsulting's work on the FirstEnergy 2019 audit and its potential implications in the FirstEnergy bribery scandal. (Dkt. 14, ¶¶ 12-13). Pircio's use of instant messenger technology satisfies both the oral notification and written report requirement. Pircio's use of instant messenger not only quickly notified Stefancin of the situation (in a way that confirms his personal knowledge and ability to act to rectify) but also delivered written information with the expectation that Stefancin would act on that information. *See Wood*, 757 N.E.2d at 22. Pircio alleges in his Counterclaim that he asked Stefancin "about whether or not scope of the 2019 audit of FirstEnergy was deliberately limited in a way that was not justified in light of the contractual relationship between FES and FirstEnergy that required FirstEnergy to provide auditing and compliance services for FES." (Dkt. 14, ¶ 12). The instant nature of the communication to Clearsulting provided sufficient information to Clearsulting that allowed it to address and rectify the situation, if it wished to do so. (*See* Dkt. 14, ¶¶ 12-13).

6

In addition, Pircio followed up with a telephone conversation with Clearsulting partner Adam Hohla to relay these same concerns. (Dkt. 14, ¶ 13). Even if the use of Skype instant messenger is not considered an oral notification, *Contreras* does not hold that this is fatal to Pircio's claims. In *McGonagle*, the Court explained that the focus should be on whether or not the employer was aware of the violation of law. 2015 Ohio Misc. LEXIS 8442, at *27. First, "it would seem to be an utter redundancy (if not a wholly vain and useless act) to notify an employer of a violation of law when the employer already knew of the violation." *Id.* at *27. In the instant matter, Clearsulting was already aware of the potential conspiracy involving FirstEnergy and related entities, which could explain why Hohla abruptly ended his discussion with Pircio. (*See* Dkt. 14, ¶ 13). As discussed before, like the employee in *McGonagle*, Pircio was also fired before any outsiders were involved.

Pircio's reporting and subsequent retaliation can be distinguished from *Haney v. Chrysler Corp.*, 6th Dist. Lucas No. L-96-330, 699 N.E.2d 121 (Ohio Ct. App. 1997). The court in *Haney* found that Haney did not strictly comply with the Ohio Whistleblower Statute because the oral reports and written reports that he made to management regarded different alleged violations and were mostly unrelated to the alleged illegal activity:

> Second, appellant failed to comply with the statute because the written reports (the four letters sent to Carmichael) lack sufficient detail to identify and describe a specific safety violation. The letters appear to be more related to appellants unhappiness with his work environment and problems with management than reporting safety violations. Even if we assume *arguendo* that the written reports contained sufficient detail, there still is no correlation between the contents of the written and oral reports. The oral reports concerned the condition of appellants equipment and the general safety of his work area. Conversely, the written reports discuss issues of safety records between first and second shift, appellants ability to do his job ("carry his weight"), appellants submission of suggestions for improvement, appellants problems with management, and his grievances about his discipline.

7

*Id.* at 122-123. In contrast, Pircio provided consistent information to his supervisors in a form that meets the requirements of the statute that were not at all related to unhappiness with working at the company.

Clearsulting improperly labels Pircio's allegations as "vague" and instead devotes its motion to perceived technical issues with how Pircio notified Clearsulting. Pircio's allegations put forth a plausible claim that Pircio promptly notified Clearsulting (of a situation that was already the subject of considerable visibility and media attention) and provided it with sufficient information to effectively address or investigate the situation. The statute protects whistleblowers who give their employer the chance to correct the problem, and Pircio has plausibly alleged that he has done just that. A just and reasonable result cannot be reached if Pircio's counterclaim is dismissed where the ultimate goal of the statute was met.

### B. Pircio plausibly alleges that he reasonably believed that Clearsulting's violation was a criminal offense that is likely a felony.

The Ohio Whistleblower Act affords protection to an employee who reasonably believes that the violation reported is a felony. R.C. 4113.52(A)(1). Pircio alleges that he reasonably believes that FirstEnergy and Clearsulting have potentially committed violations of laws and regulations governed and promulgated by one or more government agencies[1]. (Dkt. 14, ¶ 46). Plaintiffs' conduct is the subject of a federal criminal indictment (of other persons) and the felonious character of such alleged violations was already established. (Dkt. 14, ¶¶ 9, 31).

---

[1] Pircio provided this background information to explain why he reasonably believes that Plaintiffs' violation would likely be a felony, however Pircio does not make a direct allegation with this conclusion. If the Court plans to dismiss the Counterclaims on this technical distinction, Pircio requests leave to amend the Counterclaim to clearly allege more detailed and specific allegations that his use of "violated one or more federal statutes" may include felony charges.

8

On or about July 20, 2020, Pircio learned from various news media outlets of the federal criminal indictment alleging that Householder, along with several aides and lobbyists, had orchestrated a racketeering conspiracy that included the efforts intended to provide over $1 billion in funding to FirstEnergy's former subsidiary, FES. (Dkt. 14, ¶ 9). Upon learning about these allegations, Pircio realized that Clearsulting would have been tasked with auditing FirstEnergy financial statements, including the reporting of payments funneled to Householder and his co-conspirators by FirstEnergy and related entities. (Dkt. 14, ¶ 10). While conducting his investigation, Pircio observed that the 2019 audit of FirstEnergy may have violated one or more federal statutes. (Dkt. 14, ¶ 11). FirstEnergy and related entities were allegedly involved in a conspiracy

In *Youngblood v. Bd. of Comm'rs*, No. 4:19CV231, 2019 U.S. Dist. LEXIS 153234 (N.D. Ohio Sep. 9, 2019), the employee, without elaboration, reported "violations of Ohio law concerning hiring, promotion and terminations." *Id.* at *23. The court held that "[t]here is nothing about this vague allegation that would suggest that she reported an illegal activity that she reasonably believed was a felony, an improper solicitation, or a hazard to public health." In *Dobrski v. Ford Motor Co.*, 698 F. Supp. 2d 966 (N.D. Ohio 2010), the employee raised concerns relating to safety procedures. *Id.* at *980. The court held that the employee failed to allege that he had "any reasonable belief that the safety issues he complained about involved any violation of criminal law." *Id.* In *Rasawehr*, the employee sent an email that merely stated, "you still have broken federal law with my loan." 2020 U.S. Dist. LEXIS 181461, at *13. The court held that such a statement did not "satisfy the statute's requirement that employees file a written report with employers prior to notifying public authorities." As discussed, *supra*, Pircio's allegations related to the criminal conspiracy rise above these vague allegations and show that he reasonably believed

9

that the violations may be a felony and that Clearsulting may be a knowing or unwitting co-conspirator.

    **C.    Pircio engaged in a good faith effort to determine the accuracy of his concerns.**

R.C. 4113.52(C) requires a reporting employee make a reasonable and good faith effort to determine the accuracy of any information reported under R.C. 4113.52(A)(1). The information provided by the employee does not have to be "completely accurate." *Fox*, 668 N.E.2d at 901-902 ("The statute expects a whistle-blower to be vigilant, attuned to the public's safety, loyal to his employer, and sometimes even brave -- it does not require him to be infallible."); *McGonagle*, 2015 Ohio Misc. LEXIS 8442, at *36. In *Contreras*, the employee "[u]pon receipt of the relevant allegations, [] attempted to make a reasonable and good faith effort to ensure the accuracy of the information reported to him by instituting an investigation of the diversion of inventory as required by R.C. 4113.52(C)." *Contreras*, 652 N.E.2d at 945.

Pircio has plausibly alleged a good faith effort to determine the three information components. As Plaintiffs' conduct was already the subject of a federal criminal indictment, the criminality of the purported violations and the felonious character of such violations was already established. (Dkt. 14, ¶¶ 9, 31). Like in *Contreras*, Pircio instituted his own investigation after learning of the federal criminal indictment to determine the accuracy of the purported violations. (Dkt. 14, ¶ 11).

In his Counterclaim, Pircio provides factual allegations that explain his experience with IT audits and the performance of regulatory and operating auditing (Dkt. 14, ¶¶ 4-5), his knowledge of the alleged participation of FirstEnergy and its related entities in a criminal conspiracy (Dkt. 14, ¶¶ 9, 31), his knowledge that FirstEnergy's internal audit department was effectively managed by Clearsulting (Dkt. 14, ¶¶ 7-8, 10), and his review of the instructions provided by FirstEnergy to

10

Clearsulting relating to the 2019 audit (Dkt. 14, ¶¶ 10-11). Pircio did not merely read the news and make a vague report to his supervisors – he instead used his experience and knowledge to independently review the results of the 2019 audit in light of the allegations of a criminal conspiracy and **then** he relayed his concerns to his supervisors at Clearsulting.

### D. Pircio plausibly alleges that he provided sufficient information in his written report to his supervisor.

A written report is required only to give "sufficient detail to identify and describe the violation … and is not required to explain the purpose or policy of the law violated or the impact the violation may have." *See McGonagle*, 2015 Ohio Misc. LEXIS 8442, at *41 (quoting R.C. 4113.52(A)(1)(a)).

Pircio asserts that he "put in writing his concerns about the scope of the 2019 FirstEnergy audit." (Dkt. 14, ¶ 13). Specifically, he asked "whether or not scope of the 2019 audit of FirstEnergy was deliberately limited in a way that was not justified in light of the contractual relationship between FES [FirstEnergy Solutions] and FirstEnergy that required FirstEnergy to provide auditing and compliance services for FES." (Dkt. 14, ¶ 12). These allegations plausibly support that Pircio provided sufficient detail to provide his supervisor with a written account of the alleged violation so that it may be better identified and corrected.

In *Rasawehr v. Belcher*, No. 3:20-CV-00073, 2020 WL 5814557, at *5 (N.D. Ohio Sept. 30, 2020), the plaintiff merely stated, "you still have broken federal law with my loan." In the instant matter, Pircio not only voiced concerns that Clearsulting broke the law, but explained why he believed that happened. (Dkt. 14, ¶ 12). The remainder of Clearsulting's authority is not persuasive as those matters concern summary judgment motions made after the exchange of discovery. *See Zeman v. Goodrich Corp.*, No. 1:04-CV-1310, 2005 WL 1668498, at *20 (N.D. Ohio July 16, 2005) (plaintiff failed to provide the Court with the alleged email serving as a written

11

report and instead averred that a plaintiff told his supervisor about the problem); *Grove v. Fresh Mark, Inc.*, 808 N.E.2d 416, 421 (Ohio Ct. App. 2004) ("Appellant presented no evidence in the record to support these claims."). Throughout its Motion, Clearsulting consistently relies on decisions that were not decided at the pleading stage. Contrary to the findings in those cases, Pircio is not required to "attach any documents in support of his claims" or "sufficiently establish that he is entitled to protection as a whistleblower;" instead, he is required to put forth a plausible claim for relief, and he has done just that in the Counterclaim.

## IV. PIRCIO PLAUSIBLY ALLEGES THAT CLEARSULTING VIOLATED OHIO PUBLIC POLICY

Because Pircio plausibly alleges a violation of the Ohio Whistleblower Statute, he likewise plausibly alleges that Clearsulting violated Ohio public policy by terminating his employment. As Pircio complied with the Ohio Whistleblower Act before reporting his concerns to a third party, his claim for violation of Ohio public policy cannot be dismissed.

The employment-at-will doctrine, the rule that general or indefinite hiring is terminable at the will of either party for any cause or no cause, is the traditional rule in Ohio. *House v. Iacovelli*, 152 N.E.3d 178, 181 (Ohio 2020) (citing *Collins v. Rizkana*, 652 N.E.2d 653 (Ohio 1995)). In *Greeley v. Miami Valley Maint. Contractors*, 551 N.E.2d 981 (Ohio 1990), the Ohio Supreme Court established the tort of wrongful termination in violation of public policy as an exception to the employment-at-will doctrine. In order for a plaintiff to succeed on a wrongful-termination-in-violation-of-public-policy claim:

> [A] plaintiff must establish four elements: (1) that a clear public policy existed and was manifested either in a state or federal constitution, statute or administrative regulation or in the common law ("the clarity element"), (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy ("the jeopardy element"), (3) the plaintiff's dismissal was motivated by conduct related to the public policy ("the causation

element"), and (4) the employer lacked an overriding legitimate business justification for the dismissal ("the overriding-justification element").

*House*, 152 N.E.3d at 181.

Pircio plausibly alleges these four elements. R.C. 4113.52 establishes a clear public policy that prohibits an employer from taking any disciplinary or retaliatory action against an employee for making any report authorized by federal statute. (Dkt. 14, ¶ 58). Dismissing employees like Pircio who report conduct that violates federal statutes to their supervisors would jeopardize public policy as such employees would be hesitant to report violations when they could be terminated for doing so. (Dkt. 14, ¶ 59). As demonstrated by Clearsulting's actions, discussed, *supra*, Pircio's dismissal was the direct and proximate result of his actions in reporting the violations of federal statutes to his supervisors. (Dkt. 14, ¶ 60). Finally, Clearsulting lacked an overriding legitimate business justification for terminating the employment of Pircio. (Dkt. 14, ¶ 58).

## **CONCLUSION**

For all of the reasons stated herein, Clearsulting's motion to dismiss the Pircio Counterclaims should be denied.

> */s/ Marc E. Dann*
> DANN LAW
> Marc E. Dann (0039425)
> Brian D. Flick (0081605)
> P.O. Box 6031040
> Cleveland, OH 44103
> Telephone: (216) 373-0539
> Facsimile: (216) 373-0536
> notices@dannlaw.com
>
> HAUSER LAW LLC
> Laura A. Hauser (0041354)
> 3713 Longwood Ct.
> Cleveland Heights, OH 44118
> Telephone: (216) 536-8810
> laura@hauserlawllc.com

*Counsel for Defendant Michael Pircio*

**CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATIONS**

Pursuant to Rule 7.1(f) of the Local Rules for the Northern District of Ohio, I certify that there is no track yet assigned to this case. This memorandum adheres to the page limitations set forth for unassigned cases and does not exceed twenty (20) pages.

> */s/ Laura A. Hauser*
> Laura A. Hauser (0041354)
> HAUSER LAW LLC
> *Counsel for Defendant Michael Pircio*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2021, a copy of the foregoing was filed using the Court's CM/ECF electronic filing system to effectuate service on all counsel of record.

> */s/ Laura A. Hauser*
> Laura A. Hauser (0041354)
> HAUSER LAW LLC
> *Counsel for Defendant Michael Pircio*