## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| FIRSTENERGY CORP., *et al.*, | ) | Case No. 1:20-cv-1966 |
| | ) | |
| Plaintiffs and | ) | Judge J. Philip Calabrese |
| Counterclaim Defendants, | ) | |
| | ) | Magistrate Judge |
| v. | ) | Jonathan D. Greenberg |
| | ) | |
| MICHAEL PIRCIO, | ) | |
| | ) | |
| Defendant and | ) | |
| Counterclaim Plaintiff. | ) | |
| | ) | |

## OPINION AND ORDER

Since the summer of 2020, the indictment of then-Speaker of the Ohio House Larry Householder has rocked Ohio politics.  Given the nature of the illegal activity at issue, those allegations have spilled over into certain corners of the business community as well.  This case arises as a result of that indictment.  When the news broke, Michael Pircio worked for Clearsulting LLC, a company that provided outside audit services to FirstEnergy Corp., a former subsidiary of which was implicated in the scandal.  Upon hearing the news, Mr. Pircio downloaded files from FirstEnergy through a Clearsulting shared workspace and provided them to a lawyer, who turned them over to the Securities and Exchange Commission, which apparently opened an investigation.

According to the complaint, Mr. Pircio's actions came after Clearsulting terminated him.  Clearsulting and FirstEnergy brought suit under federal and State trade-secret laws, among others.  For his part, Mr. Pircio counterclaimed against his

1

former employer for wrongful termination and claims immunity against liability as a whistleblower under federal law.  In response to the parties' respective motions to dismiss, and following a hearing on the record on the motions on March 1, 2021, the Court concludes that Plaintiffs fail to state a claim against Mr. Pircio under federal law because the Defend Trade Secrets Act preempts Plaintiffs' trade-secret claims and the federal Computer Fraud and Abuse Act does not reach the conduct allegedly at issue.  Because these claims form the basis of the Court's jurisdiction, the Court declines to exercise jurisdiction over the parties' claims against one another under State law.

## STATEMENT OF FACTS

On Mr. Pircio's motion to dismiss, the Court takes the following facts Plaintiffs allege as true.

Since June 2019, Clearsulting LLC provided consulting services to FirstEnergy Corp. relating to compliance with provisions of the Sarbanes-Oxley Act.  (ECF No. 1, ¶¶ 11 & 12, PageID #3.)  To protect its proprietary and confidential information, FirstEnergy took precautions, including obligating Clearsulting to guard against unauthorized use of or access to FirstEnergy's confidential information and prohibiting Clearsulting employees from copying FirstEnergy's confidential information without FirstEnergy's prior approval.  (*Id.*, ¶ 13.)  For its part, Clearsulting took measures with its own employees to protect FirstEnergy's confidential and proprietary information.  (*Id.*, ¶¶ 14 & 15, PageID #4.)  For example, the employment agreements Clearsulting used with its own employees acknowledged

2

the confidentiality of FirstEnergy's information and limited access to that information. (*Id.*, ¶14.) Further, Clearsulting maintains a highly confidential ShareFile work site with FirstEnergy with password protection. (*Id.*, ¶ 15.)

Michael Pircio began working with Clearsulting on March 16, 2020. (*Id.*, ¶ 16.) His worked involved "preparing information technology ('IT') design assessment documents and conducting testing on IT controls at FirstEnergy." (*Id.*, ¶ 17.) Before commencing his employment with Clearsulting, Mr. Pircio signed an employment agreement prohibiting the disclosure of confidential information. (*Id.*, ¶¶ 18 & 19; *see also* ECF No. 1-1, PageID #17.) Among other things, that agreement broadly prohibited unauthorized disclosure of confidential information:

> Employee shall not, at any time, either during or subsequent to their [*sic*] employment with Clearsulting, directly or indirectly, appropriate, disclose, or divulge any Confidential Information to any person not then employed by Clearsulting.

(ECF No. 1, ¶ 19, PageID #4; ECF No. 1-1, § 2.1.3, PageID #17.) Further, the agreement limited access to the confidential information of Clearsulting's clients to that which is necessary to perform one's job. (ECF No. 1, ¶ 22, PageID #5; ECF No. 1-1, § 2.1.2, PageID #17.) Additionally, the agreement makes clear that all confidential information remains the property of Clearsulting, and the employee must return that information to Clearsulting on request or termination of employment. (ECF No. 1, ¶ 22, PageID #5; ECF No. 1-1, § 2.1.4, PageID #17–18.)

On July 30, 2020, Clearsulting terminated Mr. Pircio's employment. (ECF No. 1, ¶ 24, PageID #6.) After his termination, Plaintiffs allege that Mr. Pircio

3

accessed Clearsulting's computer, without authorization, and downloaded confidential information belonging to FirstEnergy. (*Id.*, ¶ 26.) Based on its investigation, Clearsulting alleges that Mr. Pircio downloaded 57 unique files of FirstEnergy's confidential information relating to internal controls, Sarbanes-Oxley compliance, and other sensitive matters. (*Id.*, ¶¶ 27–28.) Plaintiffs allege that Mr. Pircio downloaded confidential information unrelated to the work to which he was assigned while at Clearsulting. (*Id.*, ¶17, PageID #4.) Clearsulting advised FirstEnergy of the situation, and FirstEnergy launched its own investigation. (*Id.*, ¶¶ 31 & 32, PageID #7.)

Clearsulting demanded that Mr. Pircio delete any confidential information he took from the company in an email dated August 20, 2020. (ECF No. 1, ¶ 29, PageID #7; ECF No. 1-2, PageID #23.) The next day, counsel for Mr. Pircio responded, confirming that his client shared confidential documents with him and that he in turn provided them to "a government agency." (ECF No. 1, ¶ 30, PageID #7; ECF No. 1-3, PageID #24.) Mr. Pircio's counsel also advised that Mr. Pircio "has not shared any company information or documents with anyone other than his counsel and, through his counsel, with government officials." (ECF No. 1-3, PageID #24.)

## STATEMENT OF THE CASE

### A.    Plaintiffs Claims Against Mr. Pircio

Based on these allegations, Plaintiffs bring six claims against Mr. Pircio:

4

1.      Clearsulting alleges breach of contract against Mr. Pircio, specifically that he violated his contractual confidentiality obligations (Count I).  (ECF No. 1, ¶¶ 35–40, PageID #7–8.)

2.      Plaintiffs allege that Mr. Pircio violated the federal Computer Fraud and Abuse Act (Count II).  (*Id.*, ¶¶ 41–47, PageID #8–9.)

3.      Plaintiffs seek civil recovery for criminal acts under Ohio law (Count III).  (*Id.*, ¶¶ 48–52, PageID # 9–10.)

4.      FirstEnergy brings a claim for misappropriation of trade secrets under the federal Defend Trade Secrets Act against Mr. Pircio (Count IV).  (*Id.*, ¶¶ 53–64, PageID #10–11.)

5.      FirstEnergy asserts a claim for misappropriation of trade secrets under Ohio's Uniform Trade Secret Act against Mr. Pircio (Count V).  (*Id.*, ¶¶ 65–77, PageID #11–13.)

6.      Plaintiffs seek a declaratory judgment that Mr. Pircio may not rely on 18 U.S.C. § 1833(b)(1) to avoid liability (Count VI).  (*Id.*, ¶¶ 78–85, PageID #13–14.) In briefing, Plaintiffs do not oppose dismissal of their declaratory judgment count. (ECF No. 19, PageID #204; ECF No. 21, PageID #254–55.)

### B.      Mr. Pircio's Counterclaims Against Clearsulting

Mr. Pircio moves to dismiss each of the claims Plaintiffs assert against him. (ECF No. 15.)  For his part, Mr. Pircio brings two counterclaims against Clearsulting:

1.      Mr. Pircio claims Clearsulting violated the Ohio Whistleblower Act (Count I).  (ECF No. 14, ¶¶ 39–54, PageID #122–25.)

5

2.      Mr. Pircio alleges wrongful discharge in violation of Ohio public policy (Count II).  (*Id.*, ¶¶ 55–63, PageID #125–26.)

Although he originally named both FirstEnergy and Clearsulting as counterclaim defendants, Mr. Pircio dismissed his counterclaims against FirstEnergy.  (ECF No. 27.)  Clearsulting moves to dismiss each of the counterclaims brought against it.  (ECF No. 22.)  In the interest of maintaining a clean record, the Court omits an overview of Mr. Pircio's allegations that form the basis of his counterclaims and bases its analysis of his motion to dismiss solely on the allegations in Plaintiffs' complaint and the materials referenced and incorporated in it.

## ANALYSIS

At the motion to dismiss stage, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint "states a claim for relief that is plausible, when measured against the elements" of the cause of action asserted.  *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)).  To meet Rule 8's pleading standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  To state a claim, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability."  *Twombly*, 550 U.S. at 555.

6

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the non-moving party, accepts the allegations of the complaint as true, and draws all reasonable inferences in favor of the non-movant. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). In reviewing a motion to dismiss, the Court distinguishes between "well-pled factual allegations," which it must treat as true, and "naked assertions," which it need not. *Iqbal*, 556 U.S. at 628 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (cleaned up). Nor does a court accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Against the backdrop of this familiar standard, the Court turns to the arguments Mr. Pircio makes to dismiss the claims Plaintiffs assert against him. First, the Court briefly addresses one procedural matter. In addition to the allegations in the complaint, courts "may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *DeShetler v. FCA US LLC*, No. 3:18 CV 78, 2018 WL 6257377, at *4 (N.D. Ohio Nov. 30, 2018) (quoting *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)). What the Court may not consider, without converting the motion to one for summary judgment, arguably, is the record with respect to the stipulated injunction the Court entered. (ECF No. 11; *see also* ECF No. 10; ECF No. 10-1, PageID #94.) The Court declines to convert the motion brought under Rule

7

12(b)(6) into one for summary judgment; therefore, it does not consider any materials beyond the pleadings or those items referenced or incorporated into the pleadings. On this motion to dismiss, the Court does not consider the agreed injunction or the record relating to it.

## I.      Mr. Pircio's Motion to Dismiss Plaintiffs' Claims

Of Plaintiffs' five remaining claims, two assert causes of action under federal or Ohio trade secret statutes (Counts IV and V).  Each of these claims turns on the threshold issue of interpreting the federal Defend Trade Secrets Act of 2016, Pub. L. 114-153, 130 Stat. 376, so the Court begins its analysis there before addressing Mr. Pircio's motion to dismiss the remaining counts.

### I.A.    Immunity under the Defend Trade Secrets Act

On Mr. Pircio's motion to dismiss, the Court construes the allegations in favor of the non-movants and so assumes that the files at issue Mr. Pircio accessed constitute trade secrets under each of the relevant statutes.  On its face, the Defend Trade Secrets Act "does not prohibit . . . the disclosure of a trade secret" in certain narrowly defined circumstances involving whistleblowing.  18 U.S.C. § 1833(a)(2). Specifically, as relevant here, the statute provides:

> (1)    IMMUNITY. An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that—
>
> > (A)    is made—
> >
> > > (i)    in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and

8

> (ii)     solely  for  the  purpose  of  reporting  or investigating a suspected violation of law[.]

*Id.* § 1833(b).  In other words, the Defend Trade Secrets Act confers  limited immunity on a person for a cause of action "under any Federal or State trade secret law" to the extent disclosure of the trade secret at issue is made (1) to an attorney or, directly or indirectly, in confidence to a governmental official; and (2) for the sole purpose of reporting or investigating suspected violations of law.  (*Id*.)

On the face of the statute and on the facts alleged, the Defend Trade Secrets Act affords Mr. Pircio immunity against civil liability for Plaintiffs' claims in Count IV (for misappropriation of trade secrets under the Defend Trade Secrets Act) and Count V (brought under Ohio's Uniform Trade Secret Act).  Each of the claims under these statutes arises under trade-secret laws within the meaning of the Defend Trade Secrets Act.  And the documents Plaintiffs themselves attached to and incorporated into the pleadings show that Mr. Pircio only disclosed the trade secrets at issue to his attorney and did so to report suspected violations of federal laws.  (*See* ECF No. 1-3, PageID #24.)

Plaintiffs oppose dismissal of these claims on three separate grounds.  Each fails as a matter of law.

### I.A.1. "Solely" to Report or Investigate Suspected Wrongdoing

First, Plaintiffs rely on the word "solely" in 18 U.S.C. § 1833(b)(1)(A)(ii).  (ECF No. 19, PageID #198; ECF No. 21, PageID #243.)  They argue that Mr. Pircio did not appropriate  the  trade  secrets  at  issue  "solely"  to  report  or  investigate  suspected

wrongdoing on the part of FirstEnergy.  More specifically, Plaintiffs maintain that discovery may show that Mr. Pircio did not act *solely* to disclose the information to the SEC.  (*Id.*)  But discovery is not a fishing expedition, and Plaintiffs' speculation about what discovery may reveal does not suffice to raise the right to relief they claim above the speculative level.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678–79. Plaintiffs point to no allegation supporting even an inference that Mr. Pircio acted for any reason other than whistleblowing.  Nor does the complaint contain any allegation that Mr. Pircio disseminated trade secrets to anyone other than his counsel or, through his counsel, the government.

Unlike the authorities on which Plaintiffs rely, the pleadings here contain sufficient information to make a determination at the pleading stage that Mr. Pircio's actions fall within the statutory protection of Section 1833(b)(1)(A)(ii).  Specifically, Plaintiffs' pleadings show that Mr. Pircio did not share "any company information or documents with anyone other than his counsel and, through his counsel, with government officials."  (ECF No. 1-3, PageID #24.)  Plaintiffs make no other allegations that directly or inferentially call this fact into question.  Nor do Mr. Pircio's motivations, to the extent they may not be entirely pure, as Plaintiffs contended at argument, lead to a contrary result where the complaint makes no allegation that he disclosed the materials at issue more broadly than allowed under Section 1833(b).

### I.A.2. Improper Acquisition

Plaintiffs assert that the statutory immunity of Section 1833(b) does not bar a claim for trade-secret misappropriation by improper acquisition under the Computer Fraud and Abuse Act or the Defend Trade Secrets Act.  (ECF No. 19, PageID #197 (quotation omitted); ECF No. 21, PageID #243.)  Plaintiffs allege that Mr. Pircio exceeded the scope of his authorized access in the ShareFile work site Clearsulting used with FirstEnergy and obtained trade secrets unlawfully by doing so.  For example, they allege that Mr. Pircio accessed documents on which he was not working and that pre-dated his employment. (ECF No. 1, ¶17, PageID #4; ECF No. 21, PageID #244 n.5.)  They argue that the statutory immunity provision only applies to "disclosure of a trade secret" such that Mr. Pircio's access of FirstEnergy's trade secrets beyond the scope of his permission to do so remains actionable.  Further, they bolster this reading by reference to Section 1833(b)(5), which provides that, "[e]xcept as expressly provided for under this subsection, nothing in this subsection shall be construed to authorize, or limit liability for, an act that is otherwise prohibited by law, *such as the unlawful access of material by unauthorized means*" (emphasis added).  Because Plaintiffs base their claims, in part, on Mr. Pircio's unlawful access to trade secrets, they argue they may proceed with their claims notwithstanding the immunity provision in Section 1833(b).

### I.A.2.a. "Misappropriation" Versus "Disclosure"

Although Plaintiffs' argument has some superficial appeal, it runs headlong into the plain language of the statute.  In particular, the distinction between

11

*disclosure* and *misappropriation* on which Plaintiffs' argument depends does not withstand textual scrutiny.  Section 1839(5) defines the term "misappropriation" for purposes of the Defend Trade Secrets Act.  In the statute, the term has two alternative meanings:  (A) knowing acquisition of a trade secret by improper means; or (B) disclosure or use of a trade secret in certain circumstances.  18 U.S.C. § 1839(5).  The immunity of Section 1833(b) relates to disclosure (not use), offering apparent support for Plaintiff's argument that they may state a claim against Mr. Pircio for his acquisition of trade secrets by exceeding the scope of his permission to access it.

But misappropriation under the acquisition theory requires "that the trade secret [be] acquired by improper means."  *Id*. § 1839(5)(A).  While treating acquisition of trade secrets by exceeding one's permissions as "improper means" makes a certain amount of sense, that term—improper means—has a specific definition and meaning in the statute.  It "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  *Id*. § 1839(6)(A).  Notably absent from this definition is the theory on which Plaintiffs proceed against Mr. Pircio—namely, that he exceeded the scope of his authorized access.  (The complaint does not include the word theft, which (as discussed below) does not embrace the concept of misusing access to trade secrets.  Nor does Plaintiffs' briefing.)  To the extent Plaintiffs maintain that Mr. Pircio breached a duty to maintain secrecy, the allegations of the complaint fail to bear that out because the pleadings show that Mr. Pircio only made limited disclosure to his

counsel and, through counsel, to the government (ECF No. 1-3, PageID #24)—a disclosure for which the statute confers immunity.

Accordingly, the definition of "improper means" excludes the conduct at issue from its scope, and in so doing avoids a potentially nonsensical interpretation where a whistleblower would have immunity for *disclosure* of a trade secret to counsel or the government but not for the *acquisition* of that information. In this way, the plain language of the statute rationalizes the statutory aim of protecting trade secrets while offering a limited immunity for whistleblowers.

### I.A.2.b. Other Authorities

Plaintiffs' argument might make sense on a different set of facts. But the statutory text accounts for that too. For example, this case does not involve allegations of a current or former employee who complies with Section 1833(b) but also *uses* trade secrets against their owner. In such a case, Section 1839(5)(B) would interact with Section 1833(b) to immunize the disclosure of trade secrets to the government, but not their use beyond that. Such was the case in *Sorensen v. Polukoff*, No. 2:18-CV-67 TS-PMW, 2020 WL 1692815, at *6, 2020 U.S. Dist. LEXIS 61795, at *15 (D. Utah Apr. 7, 2020). There, the plaintiffs alleged misappropriation of trade secrets under the Defend Trade Secrets Act, and the court ruled that the statutory immunity provision protected disclosure of the materials at issue to counsel and the Department of Justice. Beyond this whistleblowing of potential health care fraud, the allegations involved use of misappropriated trade secrets to compete against their source, both by soliciting patients and encouraging the filing of medical malpractice

13

claims. Because the allegations went beyond the disclosure protected under Section 1833(b), the court declined to extend immunity to these alleged uses of the trade secrets at issue, but in doing so did not analyze the text of the statute. On appeal, the Tenth Circuit reversed and remanded on other grounds, but did not address the question of immunity. *Sorensen v. Polukoff*, 784 F. App'x 572, 573 (10th Cir. 2019). Here, the pleadings make clear that nothing similar allegedly occurred.

Plaintiffs rely on *Softketeers, Inc. v. Regal W. Corp.*, No. SACV19519JVSJDEX, 2020 WL 1164680, at *4 (C.D. Cal. Jan. 7, 2020). (*See* ECF No. 19, PageID #197.) There, at the pleading stage, the court allowed a claim for misappropriation of trade secrets to proceed. That ruling did not provide reasoning for the decision and rested on the concession that the counterclaim there stated a claim for misappropriation of trade secrets under the Defend Trade Secrets Act. With that concession, the court allowed the counterclaim to proceed as an alternative theory of liability, without specifically providing reasoning for the scope of immunity under the statute. Accordingly, *Softketeers* does not compel a different result here.

Though one court allowed limited disclosure of trade secrets, that case has limited application, at best. In *Christian v. Lannett Co.*, No. 16-963, 2018 U.S. Dist. LEXIS 52793, at *13 (E.D. Pa. Mar. 29, 2018), disclosure of trade secrets occurred pursuant to a discovery order of the court where the documents were misappropriated before enactment of the Defend Trade Secrets Act. It too does not offer guidance on the immunity provision. Beyond these cases, the parties' briefs and the Court's

research uncover no authorities directly speaking to how Section 1833(b)(1) interacts with claims of misappropriation.

### I.A.2.c. Section 1833(b)(5)

Finally, Section 1833(b)(5) does not pare back the immunity of Section 1833(b). Subsection (b)(5) does not limit the statutory immunity provided in the Defend Trade Secrets Act. Instead, it provides a rule of construction that, "[e]xcept as expressly provided for under this subsection, nothing in this subsection shall be construed to authorize, or limit liability for, an act that is otherwise prohibited by law, such as the unlawful access of material by unauthorized means." Textual reference to unauthorized means—not "improper means" defined in Section 1839(6)—suggests these terms have different meanings. Indeed, this subsection coordinates the immunity provision of the Defend Trade Secrets Act with, for example, the Computer Fraud and Abuse Act. Put another way, Section 1833(b)(1) does not foreclose an action under the Computer Fraud and Abuse Act.

\*       \*       \*

Section 1833(b) does not provide for immunity "except in cases of improper acquisition of a trade secret," contrary to Plaintiffs' contention. Nothing in the plain language of the statute affords immunity only where a person otherwise had proper access to trade secrets that he discloses pursuant to Section 1833(b)(1).

### I.A.3. Immunity as a Defense

Plaintiffs argue that the statutory immunity of the Defend Trade Secrets Act constitutes an affirmative defense not available on a motion under Rule 12(b)(6).

15

(ECF No. 19, PageID #196; ECF No. 21, PageID #246.) Without question, immunity constitutes an affirmative defense. *See, e.g.*, *Garcia v. Vertical Screen, Inc.*, No. 19-3184, 2020 WL 2615624, at *5, 2020 U.S. Dist. LEXIS 90193, at *12 (E.D.Pa. May 22, 2020) (citing *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)). Courts "are reluctant to dismiss complaints based on affirmative defenses at the pleading stage and before any discovery has been conducted." *Lockhart v. Holiday Inn Express Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013). "Courts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." *Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585, 599 (6th Cir. 2012).

In fact, courts will not dismiss a claim based on an affirmative defense unless "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." *Lockhart*, 531 F. App'x at 547 (quoting *Marsh v. Genentech, Inc.*, 693 F.3d 546, 554-55 (6th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 1357 at 713 (3d ed. 2004))). This case presents the unusual circumstance where Plaintiffs' own pleadings demonstrate the applicability of the immunity defense asserted under the Defend Trade Secrets Act. Plaintiffs attached to and incorporated into the complaint materials anticipating the defense and establishing its availability as a matter of law. (*See* ECF No. 1-3, PageID #24.) Plaintiffs' briefing acknowledges as much. (ECF No. 19, PageID #197.) Indeed, counsel for Mr. Pircio, whose letter Plaintiffs incorporated into the pleadings, tracked the language of Section 1833(b). (ECF No. 1-3, PageID #24.)

16

To resist this judgment, Plaintiffs point to three cases. Each is distinguishable from the record before the Court at the pleading stage.

*First*, Plaintiffs rely on *Unum Group v. Loftus*, 220 F. Supp. 3d 143 (D. Mass. 2016). There, the plaintiff brought suit against a long-time former employee who had received a promotion to the role of director in charge of individual disability claims. About a decade later, in-house counsel interviewed the employee as part of an investigation about claims processes. Following the interview, surveillance video showed the employee leaving work on nights and weekends with boxes of documents, many of which contained confidential information with personally identifiable information of policyholders and others given the nature of the company's business in addition to trade secrets. In response to the company's claims, the former employee invoked the immunity provision of the Defend Trade Secrets Act. In denying the employee's motion to dismiss the lawsuit, the court noted that the record contained no information to support or refute his claimed status as a whistleblower and whether he turned over all or only a portion of the information at issue to his counsel. *Id.* at 147. In contrast, the pleadings here show that Mr. Pircio turned over the documents at issue to his counsel and does not leave open the questions that prevented determination of the issue at the pleading stage in *Unum Group*. (ECF No. 1-3, PageID #24.)

*Second*, in *1-800 Remodel, Inc. v. Bodor*, No. CV 18-472-DMG (Ex), 2018 WL 6340759, 2018 U.S. Dist. LEXIS 225000 (C.D. Cal. Oct. 17, 2018), an employee threatened to file a sex discrimination claim based on incidents she reported to her

17

employer.  When the employer refused to settle that threatened claim, the employee filed a charge of discrimination.  Shortly later, the employee filed complaints with a state agency using confidential and proprietary information the employee obtained from her employer.  At some point, which is unclear from the opinion, the employer suspected the employee was falsifying the hours she worked—a fact the employer confirmed using video surveillance.  When the employee learned of this investigation, she forwarded dozens of confidential and proprietary documents to her personal email account, deleted information from her work email account, and used her personal cell phone to take pictures of confidential and proprietary information.  Denying the employee's motion to dismiss on the basis of Section 1833(b), the court found that the state of the record foreclosed dismissal on the basis of the statutory immunity in the Defend Trade Secrets Act.  2018 WL 6340759, at *6, 2018 U.S. Dist. LEXIS 225000, at *16–17.  Specifically, the court could not determine at the pleading stage the nature of the employee's complaints to the state agency or whether she made these complaints in confidence.  Again, the record here does not leave similar questions. (*See* ECF No. 1-3, PageID #24.)

*Third*, in *Garcia*, the parties disputed the reason for the termination of a former employee, who alleged wrongful termination in violation of the Americans with Disabilities Act, among other statutes.  For its part, the employer asserted trade-secret claims based on the employee sending confidential and proprietary documents to his personal email account from work.  On the former employee's motion to dismiss based on the statutory immunity of the Defend Trade Secrets Act, the court

18

determined that the face of the pleadings did not establish the defense, requiring discovery. 2020 WL 2615624, at *5. In particular, the record did not establish whether the former employee turned over the documents to his attorney, what documents he took, or that he took the documents to investigate unlawful conduct by his former employer. *Id.* For the reasons already explained, the pleadings here present different circumstances such that *Garcia* is unavailing for Plaintiffs.

* * *

No authority to which Plaintiffs have directed the Court leads to a determination other than that the immunity of Section 1833(b) applies based on the pleadings before the Court, even on a motion to dismiss. There is no allegation that Mr. Pircio has disclosed confidential information except as set forth in the correspondence between the parties made a part of the pleadings. That is, there is no allegation (at least a non-speculative, plausible one) that Mr. Pircio did anything other than provide the FirstEnergy documents he took from Clearsulting to his counsel, who in turn provided them to government officials. Accordingly, based on the plain language on the face of the statute, Mr. Pircio has immunity for allegations under the federal and State trade-secret laws Plaintiffs assert in Counts IV and V of the complaint.

### I.B.   Computer Fraud and Abuse Act

Mr. Pircio does not argue that the immunity of the Defend Trade Secrets Act extends to the private right of action Plaintiffs assert under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a). That statute allows for a lawsuit against a person

19

who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." *Id.* § 1030(a)(2)(C).  The Sixth Circuit reads this statutory language narrowly as "aimed at preventing the typical consequences of hacking, rather than the misuse of corporate information." *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 760 (6th Cir. 2020)*; see also American Family Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766, 771 (N.D. Ohio 2008) ("The statute was not meant to cover the disloyal employee who walks off with confidential information.  Rather, the statutory purpose is to punish trespassers and hackers; Defendant is neither.").  In reaching this result, the Sixth Circuit waded into a Circuit split the Supreme Court may resolve shortly.  *See United States v. Van Buren*, 940 F.3d 1192 (11th Cir. 2019), *cert. granted*, 140 S. Ct. 2667 (2020) (argued Nov. 30, 2020).

Under the Sixth Circuit's reading of the statute, the Computer Fraud and Abuse Act does not reach the conduct at issue Plaintiffs allege.  Taking their allegations as true, as the Court must, Mr. Pircio did not hack into the network or workspace of FirstEnergy or Clearsulting.  To the contrary, the complaint alleges that Mr. Pircio used authorizations he had and exceeded their scope to take data and use it for unauthorized purposes.  (*See, e.g.*, ECF No. 1, ¶¶ 15, 17, PageID #4.)  Against the backdrop of the Sixth Circuit's interpretation of the Computer Fraud and Abuse Act, the complaint notably contains no allegation—directly or by inference—that Mr. Pircio hacked into the network or ShareFile workspace.  Indeed, Clearsulting conceded at argument that Mr. Pircio is not a hacker.  According to Plaintiffs'

20

allegations, Mr. Pircio exceeded his authorization and allegedly misused corporate information, but was not a hacker. The Sixth Circuit's interpretation of the statute places such conduct beyond the reach of the statute. *Royal Truck & Trailer Sales & Serv.*, 974 F.3d at 760. Accordingly, Plaintiffs fail to state a claim in Count II on which the Court may grant relief.

### I.C. Civil Liability for Criminal Acts

Ohio law provides a civil cause of action for any person injured by a criminal act, even where the defendant has not been convicted of a crime. Ohio Rev. Code § 2307.60(A); *Buddenberg v. Weisdack*, 2020-Ohio-3832, ¶ 1 (Ohio July 29, 2020). In Count III, Plaintiffs assert a claim under this statute based on alleged violations of the federal Computer Fraud and Abuse Act and Section 2913.04(B) of the Ohio Revised Code, which makes it a crime to access a computer network without consent or beyond one's authority. In light of the foregoing analysis, Plaintiffs fail to state a claim to the extent they base this claim on the Computer Fraud and Abuse Act (or the Defend Trade Secrets Act).

### I.D. Breach of Contract

Mr. Pircio seeks dismissal of Clearsulting's breach of contract claim based on the employment agreement's incorporation of the immunity provision of the Defend Trade Secrets Act. Clearsulting acknowledges this language appears in the employment agreement, but argues that it did not fire Mr. Pircio for disclosing information to governmental officials but because he accessed and downloaded client information without authorization. (ECF No. 21, PageID #243.) In the Court's view,

based on the statutory text discussed above, Section 1833(b) forecloses Clearsulting from asserting a claim for breach of contract to the extent Mr. Pircio engaged in protected activity. Nor may Clearsulting somehow employ the Computer Fraud and Abuse Act as a predicate for a breach of contract claim given the Sixth Circuit's narrow interpretation of that statute. Put another way, because Mr. Pircio's employment contract incorporates Section 1833(b), Clearsulting may only pursue a breach of contract claim to the extent a claimed breach falls outside these areas of federal law and rests on conduct these statutes do not cover—a determination that remains to be made.

## II.    Supplemental Jurisdiction

In addition to Count III (civil liability for criminal acts under Ohio law), which both Clearsulting and FirstEnergy assert and which remains pending to the extent it alleges a claim under Section 2913.04(B) of the Ohio Revised Code, Clearsulting has a remaining (partial) claim for breach of contract (Count I). Mr. Pircio has two counterclaims that remain pending against Clearsulting that allege violations of Ohio law.

Under 28 U.S.C. § 1367(a), district courts may exercise supplemental jurisdiction over all other claims that are so related to those in the action within the Court's original jurisdiction that they form part of the same case or controversy. Further, Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction where, as here, the district court has dismissed all claims over which it has original jurisdiction.

22

In deciding whether to exercise supplemental jurisdiction, the district court should consider factors such as "comity, judicial economy, convenience, and fairness." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 196 F.3d 617, 620–21 (6th Cir. 1999). After reviewing the record in this matter, the Court declines to exercise its discretion to retain supplemental jurisdiction over the parties' respective claims alleged under State law. In this matter, in the Court's view, these factors weigh in favor of declining supplemental jurisdiction. None of the remaining claims asserted under State law presents novel issues. Ohio courts have equal or greater familiarity with these causes of action, so there are no benefits in terms of judicial economy to proceeding in federal court. And the State courts will be at least as convenient as this forum.

## CONCLUSION

For all the foregoing reasons, the Court **GRANTS IN PART** Defendant's motion to dismiss. The Court dismisses Counts IV and V of the complaint for failure to state a claim. Also, the Court dismisses Count I, except to the extent Plaintiffs allege breaches of contract unrelated to the Defend Trade Secrets Act or the Computer Fraud and Abuse Act, and Count III to the extent it alleges a violation of the federal Computer Fraud and Abuse Act. Because these claims provide the basis for federal jurisdiction, the Court **DISMISSES WITHOUT PREJUDICE** the balance of the action.

**SO ORDERED.**

23

Dated:  March 8, 2021

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio