# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **FIRSTENERGY CORP.**, *et al.*, | Case No. 1:20-cv-01966-JPCV |
| Plaintiffs/Counterclaim Defendants, | Judge J. Philip Calabrese |
| v. | |
| **MICHAEL PIRCIO**, | |
| Defendant/Counterclaimant. | |

## DEFENDANT MICHAEL PIRCIO'S RESPONSE TO PLAINTIFF'S SUBMISSIONS IN RESPONSE TO THE MARCH 8, 2021 ORDER TO SHOW CAUSE

Defendant Michael Pircio, by and through counsel and pursuant to the Court's March 8, 2021 Order To Show Cause (the "Order"), hereby responds to Plaintiff's submissions in response to the Order to show cause why Plaintiffs should not be sanctioned under Rule 11 for court filings publicly identifying Defendant as a whistleblower.

Plaintiffs and their attorneys attempted to use the federal court system to silence and punish a whistleblower while at least one Plaintiff is facing public scrutiny for its role in a vast public corruption and bribery scheme. The filings Plaintiffs submitted to the court publicly identified Mr. Pircio as a whistleblower and sent a chilling message to other similarly situated employees. Even now, Plaintiffs' submissions to the court are a continuation of its bullying campaign as they contain further unsubstantiated character attacks on Mr. Pircio while failing to directly address the conduct and motivations of Plaintiffs and their counsel.

The federal claims alleged by Plaintiffs have already been dismissed, thus highlighting the unsubstantiated basis for invoking this Court's jurisdiction to litigate against Mr. Pircio. The

1

dismissal of those claims underscores that this lawsuit was filed in this court for an improper purpose and without evidentiary support. Accordingly, sanctions are appropriate under Civil Rule 11 and should be imposed against both Plaintiffs and their attorneys.

I.  **Background**

Plaintiffs commenced this case by filing the Complaint on September 1, 2020, *after* Mr. Pircio's counsel, Vincent McKnight, represented to Plaintiffs in a letter dated August 21, 2020, that any documents obtained by Mr. Pircio from Clearsulting were provided only to his counsel, and no one else, and that his legal counsel had provided those materials to a government agency, thus invoking for Mr. Pircio the protections afforded to whistleblowers, including the right to be free of retaliation. Those facts are set forth in the McKnight letter attached to the Complaint. (ECF No. 1-3.)

Almost immediately after the suit was commenced, Defendant's counsel negotiated with Plaintiffs' counsel the Stipulated Injunction submitted to the Court on September 9, 2020, by which Defendant *again* confirmed the representations made in the McKnight letter. (ECF No. 10.) With the entry of the Stipulated Injunction, the only matters to be litigated were the "claims" for monetary relief in the Complaint alleged by Plaintiffs against Defendant—a terminated, unemployed, disabled veteran (honorable discharge) who had his lawyer provide documents exclusively to a government agency because of his concerns about the conduct of one or both Plaintiffs. As Defendant pointed out in his Motion to Dismiss, with the entry of the Stipulated Injunction there truly was nothing left to litigate that would be productive for Plaintiffs' given Defendant's unemployed status.

Mr. Pircio asked for (and obtained) an extension of twenty-eight days to respond to the Complaint. If Plaintiffs had dismissed (or stipulated to the dismissal of) the Complaint then, the

Stipulated Injunction would have remained in place, no further briefing or pleadings would have been filed, and the litigation would have terminated. Plaintiffs had no such intentions, however, as they were seemingly committed to their campaign to harass, embarrass, and humiliate Mr. Pircio, while making sure to send a message to any other putative whistleblower that if they disclose what they know to a government agency, they will suffer the same litigious fate as Mr. Pircio.

Plaintiffs' filings in response to the Order contain additional baseless attacks on Defendant. The documents that address *pre-termination* conduct by Mr. Pircio are non-responsive to the Order and should be stricken. There is simply no issue of fact relating to Mr. Pircio's work experience at Clearsulting that is remotely probative to the responses to be filed by Plaintiffs as dictated by the Order.

Being publicly outed as a whistleblower in this litigation harmed Mr. Pircio. (See Pircio Declaration, attached hereto as Exhibit 1) As a result of the filing, Mr. Pircio was required to retain legal counsel to defend himself in this action. The public disclosure of his whistleblower status also made it more difficult for him to find a job and will have a chilling effect on other whistleblowers who wish to report wrongdoing.

**II.     Argument**

In order to deter and sanction abusive and frivolous litigation, Federal Civil Rule 11 imposes standards that both parties and attorneys must meet in federal court filings. Specifically, Rule 11 states:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

Fed. Civ. R. 11(B).

Here, the court filings outing Defendant as a whistleblower were filed for an improper purpose and Plaintiffs' factual contentions lacked evidentiary support. Moreover, the affidavits of counsel and the circumstances of their filing make clear that there was no reasonable inquiry under these circumstances to support the filing.

**1. The Filing Was Presented for An Improper Purpose and Without Support**

Federal law protects whistleblowers who follow the proper procedures to disclose evidence of wrongdoing to federal authorities. These protections were also expressly incorporated into Defendant's employment contract with Clearsulting. Before this suit was filed, Defendant's legal counsel told Clearsulting that Defendant was a whistleblower who was represented by counsel and entitled to the protections against retaliation afforded to whistleblowers.

Plaintiffs' response is premised on the argument that Plaintiffs legitimately suspected Defendant of wrongdoing. But Plaintiffs had no evidence to support their argument that Defendant acquired or used the information he obtained for anything other than the protected purpose as whistleblower. In fact, Plaintiffs knew exactly why Defendant had accessed the information and exactly what he did with it—they knew that *before* they filed the Complaint. The very letter that outed Defendant as a whistleblower is the one that informed Plaintiff of this fact.

Plaintiffs have identified no facts to support their claims that publicly outing Defendant as a whistleblower was necessary to any claim or defense in this litigation. Before advancing such a factual assertion, Plaintiffs and their counsel were obligated to conduct a reasonable factual

4

investigation. Context matters in determining whether the allegations and conduct was justified. Here the relevant facts show that the filing was calculated to silence a whistleblower:

- FirstEnergy was publicly implicated in a public corruption and bribery scandal.
- The scandal included allegations of improper payments by the company to public officials in exchange for nuclear bailout legislation that benefited the company.
- Defendant accessed records he believed showed wrongdoing and engaged legal counsel to properly disclose the records in accordance with federal law and the terms of his employment contract.
- Defendant and his counsel confirmed that records were disclosed for whistleblowing purposes.

FirstEnergy continues to maintain "[a]s argued in the Motion for TRO, the threat of irreparable harm to FirstEnergy arose from the possibility that Mr. Pircio would disseminate FirstEnergy's confidential information to a competitor or a criminal actor." (Phillips Dec. ¶ 7.) Specifically, Mr. Phillips cites the affidavits of Monica Englehardt and Laura Mollenshott. Those affidavits both speculate that payment and salary information could be valuable to a competitor in the industry or that such information could harm Plaintiffs' reputations. It is utterly implausible, however, that Defendant would have used the information he accessed for the benefit of Plaintiffs' competitors or to harm FirstEnergy's reputation, such as it was. To the extent this suspicion was ever legitimate, it was dispelled by the very document that disclosed Mr. Pircio as a whistleblower—the August 21, 2020, letter from Mr. McKnight. Moreover, if Plaintiffs had a legitimate concern about the reputational impact of an alleged data breach, filing a federal lawsuit disclosing that breach would not legitimately serve to advance that interest.

Incredibly, FirstEnergy attempts to simultaneously argue that the documents in question are wholly unrelated to any legitimate whistleblowing disclosure, but also that the same documents entirely vindicate FirstEnergy's accounting and securities law practices:

> [T]he materials taken did not evidence accounting irregularities or securities law violations did not evidence accounting irregularities or securities law violations. (Phillips Decl. ¶ 9). Instead, the papers having anything to do with FirstEnergy's systems concerned only the design of FirstEnergy's accounting controls in certain areas governed by the Sarbanes-Oxley Act and provided independent confirmation of FirstEnergy's compliance in those areas.

(FirstEnergy Brief at 8.) Again, viewing the facts in context, the specific documents Defendant accessed only confirmed that they were in fact connected to Defendant's protected whistleblower activity and they dispelled the notion that Defendant acted with any improper purpose.

Clearsulting says in its brief that it "had more than plausible information that Mr. Pircio was seeking to distribute the confidential information to third parties outside the government and counsel, and therefore, Clearsulting was under no obligation to not disclose Mr. Pircio's identity in the process of taking legal action against him." But this "plausible" information turned out to be nothing more than ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ █████████████ None of these allegations was remotely pertinent to the question of why Clearsulting chose to publicly reveal Mr. Pircio's whistleblower status. Notably, Clearsulting did not express any specific security concerns based on the content of the documents themselves, and it asserts that the decision to take legal action was largely made by FirstEnergy.

In sum, it is apparent that Plaintiffs chose to file the documents exposing Defendant as a whistleblower *because* Defendant was a whistleblower.

6

## 2. Post-filing Events Do Not Excuse Plaintiffs' Misconduct

Plaintiffs devote much of their briefing to arguments that their conduct was excused or justified by the fact that the news media did not immediately report on the filing and by Defendant's litigation responses. It is undisputed that Defendant did not consent to be sued or to be publicly identified as a whistleblower. Once the initial filing was made and his status as a whistleblower was a matter of public record because of the Exhibits to the Complaint, the harm was done and there was no way for Defendant to unring the bell.

Nothing in Defendant's response to the lawsuit justified the filing of the disclosure in the first instance. Plaintiffs attempt to frame the disclosure of Defendant's whistleblower status as a matter of ethics or professional responsibility, asserting that such disclosure was necessary to inform the Court as it considered ruling on Plaintiffs' motion for a temporary restraining order. Plaintiffs further argue that if the document had been filed under seal, it would have been inevitably disclosed when Defendant asserted his whistleblower status as an affirmative defense. Plaintiffs further argue that they are exempt from any obligation to hold the identity of a whistleblower confidential. But the absence of an express prohibition on disclosure does not justify the exposure of a whistleblower. Moreover, the fact that Plaintiffs knew that Defendant would need to invoke his whistleblower status as a shield did not permit Plaintiffs to use that status as a sword against him through public disclosure.

Additionally, the filing of the second letter did not excuse the filing of the first because the second letter contained roughly the same substance as the first letter. Both documents identified Mr. Pircio as a whistleblower while the second also provided assurance that documents had not been distributed or shared apart from disclosure to the appropriate government authority. Plaintiffs fixate on the fact that Defendant's counsel did not object to the *second* McKnight letter that was

7

attached to the Stipulated Injunction at the insistence of Plaintiffs' counsel. Defendant did not object to the filing of the second McKnight letter because it mostly restated the contents of the first letter and an objection would not have cured or mitigated the damage already caused by the filing of the first letter with the Complaint.

The timing of media reports also has no bearing on Plaintiffs' conduct. Rule 11 speaks to filings on the public docket, not news reports. It is of no consequence when any news organization first reported on Defendants' whistleblower status. The fact of the filing in the public record and the great public interest in FirstEnergy's involvement in the public corruption scandal made public disclosure of the lawsuit practically inevitable.

**B.    Sanctions Should Be Imposed on Plaintiffs and Their Attorneys**

Rule 11 expressly provides for the award of sanctions in order to deter frivolous litigation conduct:

> Nature of a Sanction. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. Civ. R. 11(c)(4).

In the Sixth Circuit, the test for determining whether a party has violated Rule 11 is whether the individual's conduct was reasonable under the circumstances. *Bachi–Reffitt v. Reffitt*, No. 1:17–CV–263, 2017 WL 5998112, at *9 (W.D. Mich. 2017), citation omitted. The standard is an objective one. *Id.,* citing *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989); *see also First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002) (noting that "the imposition of Rule 11 sanctions requires a showing

of 'objectively unreasonable conduct' " (quoting *United States v. Kouri–Perez*, 187 F.3d 1, 8 (1st Cir. 1999)). "Thus, an attorney's good faith is not a defense." *Id.* The attorney's conduct is to be judged at the time the pleading or paper was signed rather than on the basis of hindsight. *Id.,* citing *INVST Fin. Grp., Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987).

For a Rule 11 violation "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Bachi–Reffitt, Id.,* citing Fed. R. Civ. P. 11(c)(1). "[A] district court is given wide discretion in deciding the amount of sanctions to impose," *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 376 (6th Cir. 1996), but "before a district court awards an attorney fee, Rule 11 requires a finding that the recoverable fee was induced by the filing of the sanctionable pleading," *Bodenhamer Bldg. Corp. v. Architectural Res. Corp.*, 873 F.2d 109, 114 (6th Cir.1989). *In re Polyurethane Foam Antitrust Litigation*, 165 F.Supp.3d 664, 671 (N.D. Ohio, 2015). The range of sanctions that a court may award pursuant to Rule 11(c)(4) includes nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation. Fed. R. Civ. P. 11(c)(4).

An order directing payment of Defendant's reasonable attorney fees is appropriate in this case for several reasons. First, Mr. Pircio—through his legal counsel—affirmatively represented to Clearsulting in August 2020 that the documents in issue were only shared with a government agency, and no one else. Plaintiffs' "concerns" about Mr. Pircio's treatment of those materials (other than what is represented in the McKnight letters) have absolutely no basis or evidence, and there is no objective indication that Plaintiffs undertook any investigation or due diligence prior to

9

filing the Complaint to determine otherwise.[1]  Based on Plaintiff's responses to the Order, they merely posited that something else needed to be done to stop Mr. Pircio from doing something his lawyer already represented was not happening.

Next, after Plaintiffs filed their multi-count lawsuit (now dismissed upon Defendant's motion), Defendant was forced to hire legal counsel and defend a lawsuit brought against him by powerful and influential companies represented by a rather deep bench of experienced lawyers at powerful and influential law firms.  Plaintiffs and their attorneys chose to apply this crushing pressure to Defendant after he lost his job and began a search for a new job.  Moreover, the specific filings that publicly outed Defendant as a whistleblower have deprived him of the protections usually afforded whistleblowers and made it difficult for Defendant to find new employment.  Such conduct has a chilling effect on future whistleblowers and undermines the ability of federal law enforcement to effectively hold companies to account under securities laws.

Plaintiffs again justify or excuse their conduct by explaining that they do not have a statutory obligation to maintain Defendant's whistleblower status as confidential.  Although that technical slight of hand may be accurate, that surely does not justify their conduct in publicly outing a whistleblower in a case where revealing him as a whistleblower is retaliatory in itself, that disclosure is causing continuing harm to him, and subsequent events have seemingly validated Mr. Pircio's concerns about Plaintiffs' conduct.  After Mr. McKnight provided his August 21, 2020, letter to Clearsulting's staff, there was no legitimate need to file the Complaint and seek injunctive relief and damages.  Then, after the Stipulated Injunction was entered, Plaintiffs could have simply dismissed the litigation and avoided the months of briefing and eventual dismissal of their claims

---

[1] It is noteworthy that Plaintiffs never responded to Mr. McKnight's August 21, 2020 letter—they just filed the Complaint with his letter attached.

on Defendant's motion, plus the proceedings that they are now defending on the Court's Order. Defendant was surprised they did not do that once the Stipulated Injunction was entered, but when Defendant was forced to defend himself in the litigation, he and his counsel did just that and moved for the dismissal of the Complaint, which was granted in part, resulting in the dismissal of this case.

A sanctions order should apply to both Plaintiffs and their attorneys. The Advisory Committee Notes to Rule 11 make clear that sanctions should be applied to the specific individuals responsible for the misconduct:

> The sanction should be imposed on the persons—whether attorneys, law firms, or parties—who have violated the rule or who may be determined to be responsible for the violation. The person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and in most situations is the person to be sanctioned for a violation. Absent exceptional circumstances, a law firm is to be held also responsible when, as a result of a motion under subdivision (c)(1)(A), one of its partners, associates, or employees is determined to have violated the rule.

Civil Rule 11, 1993 Advisory Committee Notes.

Here, Plaintiffs' submissions highlight that the conduct of both Plaintiffs and their attorneys is sanctionable. Both Plaintiffs acted in concert to commence this legal action with pleadings that outed Plaintiff as a whistleblower. Plaintiffs' Responses to the Order (ECF Nos. 37 and 38) confirm that each attorney who signed the initial pleading also made an independent legal judgment to file the Complaint with the McKnight letter attached as an Exhibit. In doing so, each fell short of the obligations of Rule 11.

Plaintiffs' conduct caused harm to Mr. Pircio. Mr. Pircio was forced to engage legal counsel to defend himself against litigation commenced against him by two powerful and influential companies represented by two powerful and influential law firms. The public filings

outing Mr. Pircio as a whistleblower have made it more difficult for him to find another job. The disclosure came in a public filing made at a time when Plaintiff FirstEnergy was facing public scrutiny for its ties to a public corruption scandal and was calculated to deter other individuals with knowledge from blowing the whistle by giving evidence to the appropriate government agencies. That level of scrutiny cast on FirstEnergy has made this litigation highly visible to the public and the media, compounding the damage to Defendant.

Defendant has incurred reasonable attorney fees and expenses as a direct consequence of Plaintiff's filing. The Court should permit Defendant to submit a petition for attorney fees and costs.

## III. Conclusion

Plaintiffs and their attorneys should be sanctioned for their court filings outing Defendant as a whistleblower. (ECF Nos. 10-1 and 1-3.) The filings were made for an improper purpose and without evidentiary support. Sanctions should be imposed, and Plaintiffs and their counsel should be required to pay Defendant's reasonable attorney fees and expenses in defending this case.

*/s/ Brian D. Flick*
Brian D. Flick (0081605)
Marc E. Dann (00379425)
DANN LAW
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*/s/ Laura A. Hauser*
Laura A. Hauser (0041354)
HAUSER LAW LLC
3713 Longwood Ct.
Cleveland Heights, OH 44118
Telephone: (216) 536-8810
laura@hauserlawllc.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2021, a copy of the foregoing was filed using the Court's CM/ECF electronic filing system to effectuate service on all counsel of record.

>/s/ Brian D. Flick
>Brian D. Flick (0081605)
>Dann Law