# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| FIRSTENERGY CORP., *et al.*, | Case No. 1:20-cv-1966 |
| Plaintiffs and Counterclaim Defendants, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Jonathan D. Greenberg |
| MICHAEL PIRCIO, | |
| Defendant and Counterclaim Plaintiff. | |

## OPINION AND ORDER

In the course of pursuing their claims against Michael Pircio, Plaintiffs FirstEnergy Corp. and Clearsulting LLC publicly filed two documents on the Court's docket, one of which had the effect of identifying Mr. Pircio as a whistleblower. In an Order to Show Cause, the Court requested that Plaintiffs explain how the filing of those documents complies with Rule 11(b)(1) and (3) and what proper purpose those filings served. In response, Plaintiffs and Mr. Pircio provided supplemental information to the Court. Based on the record as a whole, the Court makes the following findings of fact and conclusions of law.

### GOVERNING LEGAL STANDARDS

Rule 11 imposes an obligation that every "pleading, written motion, or other paper" submitted to a court, after reasonable inquiry, "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). In determining whether an attorney

or party violates this rule, the Court applies an objective standard of reasonableness. *See Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997) ("In this circuit, the test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances.") (citing *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990)). "[A]n attorney's good faith is not a defense." *Jackson v. Law Firm of O'Hara*, 875 F.2d 1224, 1229 (6th Cir. 1989).

In determining objective reasonableness under the circumstances, the Court "is given wide discretion." *INVST Fin. Grp. Inc. v. Chem–Nuclear Sys.*, Inc., 815 F.2d 391, 401 (6th Cir. 1987). For a violation of this rule, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Notwithstanding this language, the law of this Circuit mandates the imposition of sanctions for a violation of Rule 11. "If a district court concludes that Rule 11 has been violated, the court has no discretion and must impose sanctions." *INVST Fin. Grp.*, 815 F.2d at 401.

Beyond Rule 11, a district court has inherent authority to sanction bad-faith conduct. *First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) (quoting *Runfola & Assocs. v. Spectrum Reporting II*, 88 F.3d 368, 375 (6th Cir. 1996)). Where a party litigates in bad faith or for oppressive reasons, a court may invoke its inherent authority to award sanctions. *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). Such sanctions require finding that "the claims advanced were meritless, that counsel knew or should have known this, and

that the motive for filing the suit was for an improper purpose such as harassment." *Id.* (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1375 (6th Cir. 1987)). Although this standard overlaps to some degree with Rule 11, overall it imposes a higher showing for the imposition of sanctions. *See, e.g, BDT Prods. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

By way of background, on July 21, 2020, then-Speaker of the Ohio House of Representatives Larry Householder was arrested in connection with his alleged role in a $61 million bribery scheme to secure passage of legislation (House Bill 6) that, among other things and to oversimplify, bailed out nuclear power plants in Ohio. On July 30, 2020, a grand jury returned an indictment against Householder and others in connection with the alleged scheme. Those allegations implicate FirstEnergy Corp. At the time, Clearsulting provided outside audit services to FirstEnergy, and Mr. Pircio worked for Clearsulting.

When news of the scandal broke, Mr. Pircio reviewed FirstEnergy's audit instructions to Clearsulting and the resulting audit Clearsulting performed. Based on his review and his previous audit experience, Mr. Pircio observed that Clearsulting's 2019 audit of FirstEnergy may have violated one or more federal laws. Within a few days, on July 23, 2020, Mr. Pircio had a conversation over Skype instant messenger with a Clearsulting director regarding the scope of the 2019 FirstEnergy audit and whether it was inappropriately limited. Shortly after that, Mr. Pircio also raised the same issue by phone with a Clearsulting partner.

A week later, on July 30, 2020, Clearsulting terminated Mr. Pircio. Despite his termination, Clearsulting did not cut off Mr. Pircio's access to its documents and data or that of FirstEnergy until July 31, 2020 so that he could finish various projects to which he was assigned. Mr. Pircio then took 57 files from the Clearsulting database relating to the 2019 audit of FirstEnergy. On August 7, 2020, Mr. Pircio made a confidential report of suspected violations of federal law to the Securities and Exchange Commission.

**I.   August 21, 2020 Letter (ECF No. 1-3)**

On August 20, 2020, a human resources manager at Clearsulting sent an email to Mr. Pircio, copying outside counsel, advising that Clearsulting had identified 57 unique files he had downloaded. This email requested that Mr. Pircio notify Clearsulting no later than noon on August 21, 2020 whether he transferred or retained any Clearsulting files and that he immediately delete any such files.

In response, Mr. Pircio's counsel in Washington, D.C., sent a letter to the human resources manager. This letter disclosed that counsel had provided documents to government officials in connection with suspected violations of law. Further, counsel advised Clearsulting that Mr. Pircio had not shared any company information or documents with anyone other than counsel or, through counsel, government officials.

When Plaintiffs filed suit on September 1, 2020, they attached various documents to their complaint and simultaneously sought a temporary restraining order and preliminary injunction to enjoin Mr. Pircio from disseminating their trade

4

secrets and confidential information. One of those documents was the letter dated August 21, 2020 from counsel for Mr. Pircio to Clearsulting.

The Court's docket shows that FirstEnergy's outside counsel at the time filed this letter, both as an exhibit to the complaint (ECF No. 1-3) and to the motion for temporary restraining order and preliminary injunction (ECF No. 2-3). By way of explanation, FirstEnergy's counsel defends the filing of this letter as necessary to put a full record before the Court when seeking *ex parte* relief in the form of a temporary restraining order. Further, based on his investigation as of that date, he believed that his client had not violated any laws and did not know what Mr. Pircio intended to do with the information he took following his termination. Clearsulting's counsel played a secondary role but endorsed the rationales FirstEnergy's counsel offers. FirstEnergy and its counsel took the lead on the filings, as one might suspect based on these facts.

Counsel for both FirstEnergy and Clearsulting are experienced and sophisticated lawyers. They well know that providing a full record to the Court, even if seeking relief on an *ex parte* basis, does not require filing sensitive information on the public docket. Based on the record regarding the filing of the August 21, 2020 letter, the Court cannot say that the actions of counsel for FirstEnergy or Clearsulting are objectively unreasonable. Although counsel could have achieved the same ends they purported to serve in other ways, such as filing under seal or proceeding *in camera*, the Court will not second guess their strategic decisions, particularly ones made on relatively tight timeframes and, in Clearsulting's case, largely made by

another party. In any event, the record shows that the filing of this letter did not result in publicly identifying Mr. Pircio as a whistleblower.

## II. September 2, 2020 Letter (ECF No. 10-1)

Following the appearance of Mr. Pircio's Ohio counsel, the parties negotiated a resolution to Plaintiffs' motion for preliminary injunction within approximately two days. Under that agreement, the parties stipulated to entry of an injunction enjoying Mr. Pircio from using or disclosing information he downloaded from Clearsulting's sharepoint site. He further agreed to return that information, except that his counsel may retain a copy to defend the litigation Plaintiffs brought. Further, that stipulated injunction allowed Mr. Pircio to cooperate with the Securities and Exchange Commission or any other governmental agency in their ongoing investigations.

As an exhibit, the stipulated injunction attached correspondence dated September 2, 2020 from Mr. Pircio's counsel in Washington, D.C., to outside counsel for FirstEnergy. That letter responded to the filing of this lawsuit and reiterated what the previous letter said: that counsel had shared documents with a government agency. This letter went further and specifically identified the agency as the SEC. Like the previous letter, this one represented that neither counsel nor Mr. Pircio shared the documents and information with anyone other than the SEC.

In negotiations over the language of the stipulated injunction, counsel for FirstEnergy insisted on filing the September 2, 2020 letter on the Court's docket publicly. Mr. Pircio's counsel provided revisions to drafts of the proposed stipulation to avoid disclosure of this letter, but counsel for FirstEnergy refused to proceed

without filing the letter on the Court's public docket. Doing so served no proper purpose.

Within days of the filing of the stipulated injunction on September 9, 2020, which gratuitously and needlessly attached the September 2, 2020 letter, news organizations in Cleveland and Ohio ran stories that the SEC was conducting an investigation of FirstEnergy. They identified Mr. Pircio as the whistleblower who provided the information that launched the SEC's inquiry. Those news reports have circulated around the country and are readily available online. Before the filing of this letter, no public report connected Mr. Pircio to any investigation. Indeed, the filing of this letter prompted news reports of an SEC investigation of FirstEnergy.

To defend filing the September 2 letter publicly, counsel for FirstEnergy, who again took the lead, states that the letter's author failed to object, as did Mr. Pircio's Ohio counsel when they appeared. Any reluctance or resisting to filing the document counsel chalks up to a "misunderstanding." Likewise, counsel for Clearsulting's position is that Mr. Pircio's counsel did not object to filing this document in connection with the stipulated injunction. Essentially, Plaintiffs' counsel blame counsel for Mr. Pirico.

The documentary evidence belies their claims and their defenses with respect to this document. It shows, and the Court finds, that Mr. Pircio's counsel proposed changes to remove language from what became the stipulated injunction attaching the letter, but Plaintiffs' counsel refused to accept that proposal. At that point in the proceeding, attaching the letter served no legitimate purpose. The justification of

needing to provide a full record to the Court when seeking emergency injunctive relief, potentially on an *ex parte* basis does not apply. Moreover, the September 2, 2020 letter provides the same material information as the first letter. Because this second letter contains the additional information tying Mr. Pircio to the SEC's investigation, the record demonstrates and the Court finds that this filing had the effect of publicly identifying Mr. Pircio as a whistleblower, which has had serious adverse consequences for him, personally and professionally.

Based on this record, the best the Court can say for Plaintiffs' counsel with respect to this filing is that they were negligent or allowed their clients to use them to advance improper purposes. In this view, their justifications for filing the letter, though false and unsupported in the record, walk the line of technical compliance with their obligations while simultaneously advancing the ulterior motives of their clients. But their subjective good faith is not a defense under the law of this Circuit. *See Jackson*, 875 F.2d at 1229.

Whether their actions are objectionably unreasonable presents a close call. One fact tips the balance against such a finding. The conduct at issue occurred before re-assignment of the case when another Judge was presiding. Therefore, the Court declines to exercise its discretion to make such a finding on the facts and circumstances before it.

## CONCLUSION

Before concluding this matter, the Court makes a final point. One may fairly view the filing of this lawsuit itself as a strong message to Mr. Pircio and others who

might cooperate in any way with the ongoing investigations implicating FirstEnergy. Indeed, it is difficult to see it any other way. But the Court needs to disabuse Clearsulting of one suggestion it makes in response to the Order to Show Cause. (ECF No. 37, PageID #392.) Dismissal of the complaint had nothing to do with the Order to Show Cause. Nor did the parties' respective claims, defenses, and legal positions, which the Court evaluated on their own merits. Dismissal of a complaint, which courts do every day, does not mean a party violated any rule or ethical obligation.

Here, the Court has a grave concern that the actions of FirstEnergy and Clearsulting used the Court to obstruct justice, engage in witness tampering, or otherwise interfere with ongoing criminal and civil investigations. If they did (and the Court expresses no opinion on that issue or on any conduct implicated in the investigations), those ongoing investigations provide a better vehicle to remedy any improper conduct. Accordingly, this matter is at an end.

**SO ORDERED.**

Dated: April 23, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio